**UNITED STATES of America,
Plaintiff,**

v.

**Stanley TURZYNSKI, Defendant.**

**No. 66 CR 151.**

United States District Court
N. D. Illinois, E. D.

June 2, 1967.

Joseph M. Solon, Chicago, Ill., for plaintiff.

Jack Schmetterer, George Faber, Asst. U. S. Attys., Chicago, Ill., for defendant.

## MEMORANDUM OPINION

WILL, District Judge.

Defendant is presently under indictment on two counts of willfully attempting to evade his income tax obligations to the United States in violation of 26 U.S.C. § 7201. The indictment charges that defendant knowingly made false statements of his taxable income on his returns for the years 1959 and 1960.

By the instant motion, defendant asks this court to suppress as evidence all documents and all statements, oral or written, which he gave to agents of the Internal Revenue Service subsequent to the initiation of the criminal investigation which resulted in the present indictment. He argues that once the United States launched an investigation designed to develop evidence against him for potential criminal prosecution, it was incumbent on the investigating agents to warn him of his constitutional rights. Admittedly no such warning was ever given. He contends, therefore, that any evidence which he supplied to the government solely during the criminal investigation or information derived therefrom should be suppressed.

■ We agree. After a necessarily lengthy narration of the facts of this case, we will discuss the legal bases for our conclusions and attempt to delineate those materials which are suppressed.

The United States Internal Revenue Service conducts both civil investigations to determine whether deficiencies should be assessed against taxpayers and criminal investigations to develop evidence for potential criminal prosecution. In practice, civil investigations are conducted by a different division at the IRS than that which conducts criminal investigations. Civil investigations are conducted by Internal Revenue Agents. As soon as an Internal Revenue Agent has reason to believe that the taxpayer under investigation has committed a criminal violation, he must refer the case for criminal investigation. If his superiors in the civil department agree with his conclusions, the case is referred to the Intelligence Division of the Internal Revenue Service whose jurisdiction is limited to criminal investigations. The investigators of the Intelligence Division are known as Special Agents.

In 1959, Internal Revenue Agent Arnold contacted defendant, a physician who came to the United States from Europe after World War II, and examined his records and tax returns for the years 1957 and 1958. Arnold's investigation uncovered modest deficiencies which the defendant promptly paid. This was defendant's first contact with the IRS.

In 1962, the defendant again became the subject of a civil tax investigation. This investigation was conducted at defendant's medical center by Internal Revenue Agent Pang. At Pang's request, defendant gave him access to all defendant's records, including the retained copies of his tax returns for the years 1959, 1960 and 1961. Pang summarized much of his findings from these records on work sheets which are presently included in the government's exhibits. He advised defendant that he was proposing certain deficiencies for the years in question.

Pang was subsequently transferred and, prior to his departure, he informed defendant that another agent would take his place. Pang's replacement was Internal Revenue Agent McDermott. At this point the case was still a civil investigation.

McDermott continued the investigation at defendant's office, conducting his first interview with the defendant on May 14, 1963. Based on information supplied by the defendant during this and two subsequent interviews and on an independent investigation of banks and savings institutions where defendant has accounts, McDermott concluded that the case should be submitted to the Intelligence Division for criminal investigation. He prepared a fraud referral which was approved by his superiors and the case turned over to the Intelligence Division.

The first meeting between the defendant and agents of the Internal Revenue Service after the case had become a criminal investigation occurred on August 29, 1963. Internal Revenue Agent McDermott and Special Agent Archambault interviewed the defendant at his office. Archambault states that he introduced himself as a Special Agent of the Intelligence Division. The defendant has testified that he does not recall how Archambault identified himself but that he was unaware of any distinction between an Internal Revenue Agent and a Special Agent. At no time during this interview or any subsequent meetings with the two agents was defendant apprised that the agents were now engaged in a criminal investigation. Nor was he advised of his constitutional rights, including his right to counsel, his privilege against self-incrimination, and his right to refuse access to his records absent a search warrant or subpoena. During this interview and at subsequent interviews throughout the criminal investigation, defendant answered all questions asked by the agents and permitted them full access to his records even to the extent of allowing them to remove records to the IRS offices for inspection and copying and also permitting them to microfilm records at his office.

Although he had a number of conferences with the two agents during the period, defendant was not informed of the criminal nature of the investigation from 1963 until April 1965, when he received a letter from the Chief of the Intelligence Division stating that criminal prosecution was being contemplated. The letter advised him that if he desired, he might appear at the IRS offices for a formal interview to explain his returns in the light of evidence of his failure to report substantial income in 1959 and 1960, and that he was entitled to be represented by counsel at the interview.

The formal interview was conducted on April 29, 1965 at the IRS downtown office by Group Supervisor Yelm of the Intelligence Division. Again, defendant was not apprised of his right to counsel or his privilege against self-incrimination. Mr. Yelm, however, refused to discuss the case until a lawyer retained by the defendant arrived. After the lawyer arrived, defendant proceeded to make various statements to Mr. Yelm, some of which were of a possibly incriminating nature.

■ The narrow legal issue here presented is whether and to what extent the Internal Revenue Service is required to advise a taxpayer of his constitutional rights when an investigation of his returns shifts without his knowledge from a civil investigation for possible deficiencies to a criminal investigation of possible tax law violations, when his assistance is no longer being sought to ascertain his proper debt to the government but to aid the government to convict him of a crime. We hold that once a taxpayer becomes the subject of a criminal tax investigation, as evidenced by the referral of the investigation to the Intelligence Division or otherwise, our adversary process of criminal justice has become directed against him as a potential criminal defendant. Any evidence obtained from him is admissible only if the taxpayer furnished it after knowingly and voluntarily waiving his constitutional rights and privileges. Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964); Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

To hold otherwise would lead to the anomolous conclusion that a person suspected of bank robbery, sale of narcotics, murder, rape or other serious crime is entitled to greater protection of his constitutional rights than a person suspected of violating the internal revenue laws. For when the silent transition from civil to criminal investigation takes place in a tax case, the taxpayer being interrogated and asked to furnish his books and records is just as surely a prime suspect and candidate for criminal pros-

ecution as the individual under interrogation as a suspect for other crimes.

■ In the last analysis, the test enunciated by recent decisions is whether a suspect has voluntarily waived his constitutional rights and privileges. The Supreme Court has logically pointed out that it is impossible voluntarily to waive a right or privilege you are unaware you possess. Miranda v. State of Arizona, 384 U.S. 436, at 462, 86 S.Ct. 1602, 16 L.Ed.2d 694.

■ Whether a suspect is induced to incriminate himself by a combination of ignorance of his rights and the coercive atmosphere of custody, or by ignorance of his rights combined with the inference that the purpose of the interrogation is simply to ascertain his dollars and cents liability for taxes, the result is the same, an involuntary self-incrimination. In some respects the tax investigation is more insidious and dishonest than the custodial interrogation, for the suspect in custody well knows his interrogators are seeking evidence to convict him of a crime while the tax suspect is permitted and even encouraged to believe that no criminal prosecution is in contemplation. The Internal Revenue Agent who has discussed possible deficiencies with the taxpayer continues active in the investigation augmented by the Special Agent whose presence and purpose as a criminal investigator is never disclosed to the suspect. As Judge Clary said in United States v. Guerrina, 112 F.Supp. 126 (E.D. Pa. 1953):

"I can see no difference between a search conducted after entrance has been gained by stealth or in the guise of a business call, and a search for criminal purposes conducted under the guise of an examination for purely civil purposes. Whether the arrangement to have Agent Coram make the appointment with the defendant was by design to obtain entrance for special Agent Pearson, or whether it was done innocently, the effect in so far as the defendant was concerned was the same. He was deluded into giving consent to the examination of his papers and records and his action in so doing cannot be said to be voluntary in so far as making available his papers for (sic) purpose of investigation to establish fraud for criminal prosecution purposes." [1]

The court recognizes that since *Escobedo* and *Miranda*, a number of courts have held those decisions to be inapplicable to non-custodial criminal tax investigations.[2] Our research discloses, however, that only one of the cited cases, Kohatsu v. United States, 351 F.2d 898

---

1. 112 F.Supp. at 129. Judge Clary subsequently modified his opinion, 126 F.Supp. 609 (E.D.Pa.1955), to admit the evidence because he felt bound by United States v. Burdick, 214 F.2d 768 (3 Cir. 1954). As note 8, infra, discloses, *Burdick* was based on the Supreme Court decisions in *Wilson* and *Powers* which we believe necessarily overruled by *Miranda*. Accordingly, we find Judge Clary's original opinion persuasive.

2. Post-*Escobedo*, pre-*Miranda* cases holding *Escobedo* inapplicable to the instant situation are United States v. Spomar, 339 F.2d 941 (7 Cir. 1965), cert. denied 380 U.S. 975, 85 S.Ct. 1336, 14 L.Ed.2d 270 (1965); Kohatsu v. United States, 351 F.2d 898 (9 Cir. 1965), cert. denied 384 U.S. 1011, 86 S.Ct. 1915, 16 L.Ed.2d 1017 (1966); and Rickey v. United States, per curiam, 360 F.2d 32, 33 (9 Cir. 1966).

Post-*Miranda* cases holding *Miranda* inapplicable to the instant situation include: United States v. Fiore, 258 F.Supp. 435 (W.D.Pa.1966); United States v. Carlson, 260 F.Supp. 423 (E.D.N.Y. 1966); United States v. Hill, 260 F.Supp. 139 (S.D.Cal.1966); United States v. Schlinsky, 261 F.Supp. 265 (D.Mass. 1966); United States v. Spinney, 264 F.Supp. 774 (D.Mass.1966); United States v. Gleason, 265 F.Supp. 880, 888 (S.D. N.Y.1967); Stern v. Robinson, 262 F.Supp. 13 (W.D.Tenn.1966); United States v. Bachman, 267 F.Supp. 593 (W.D.Pa. 1966).

Post-*Miranda* cases where *Miranda* was applied to non-custodial criminal tax investigations include United States v. Kingry, 67-1 U.S.T.C. 83,604 (N.D.Fla. 1967), and United States v. Schoenburg, 19 AFTR 2d 347 (D.Ariz.1966).

(9 Cir. 1965), attempts to draw any meaningful distinction between the instant situation and the principals enunciated in the recent Supreme Court decisions. For reasons discussed below we disagree with the analysis set forth in *Kohatsu*.

The other cases refusing to apply *Miranda* to non-custodial criminal tax investigations rely almost entirely upon that part of the *Miranda* opinion which deals with custody or other significant deprivation of physical freedom. In so doing, many courts have given custody an independent constitutional significance which is belied by a careful reading of the opinion.

In *Miranda*, the Court was not concerned solely with the protection of constitutional rights in a custodial atmosphere. The Court enunciated the broader principle that when the investigative power of the government is directed toward an individual with the intent to obtain incriminating evidence from him, that individual should be afforded an opportunity knowledgeably to exercise his constitutional rights. It is because a person cannot knowledgeably exercise his rights unless he is aware of them that the multiple warning requirement was established.

The administrative organization of the Internal Revenue Service offers at least one clear point at which the adversary process can be said to begin in criminal tax investigations. It is at this point, when the case is turned over to the Intelligence Division, that the investigation admittedly has as its ultimate objective the conviction of the taxpayer for criminal tax evasion. He is now a suspect who, although he is unaware of it, is being asked to furnish the investigative agents with information which he has a constitutional right to refuse to furnish and with respect to which he is entitled to have the advice of counsel. He is being asked to help convict himself without knowing it.

In Kohatsu v. United States, supra, the Ninth Circuit dealt with a fact situation substantially similar to the instant case. There, also, a civil investigation had been transformed without the taxpayer's knowledge into a criminal investigation and information had subsequently been elicited from the taxpayer without informing him of his constitutional rights, including his right to counsel. Relying on *Escobedo* [3], the appellant argued that once the investigation shifted from civil to criminal, the accusatorial stage had begun, and at that point the government was under an obligation to inform him of his rights.

The Ninth Circuit held that *Escobedo* did not apply to criminal tax investigations because the accusatorial stage of the proceedings had not been reached in the case before it, stating

"The Supreme Court in Escobedo referred to an unsolved crime. The existence of the crime was apparent. The police were seeking to identify the offender. * * * In the instant case the essential question to be determined by the investigations of the revenue agents was whether in fact any crime had been committed." [4]

This distinction between a criminal tax investigation where the taxpayer is suspected of a tax fraud not yet fully identified and a criminal investigation where a known violation of the law is attempted to be linked to a particular suspect is logically irrelevant for purposes of determining when the adversary process has begun, i. e., when the investigative machinery of the government is directed toward the ultimate conviction of a particular individual, and when, therefore, a suspect should be advised of his rights. What matter if

---

3. "We hold only that when the process shifts from investigatory to accusatory —when its focus is on the accused and its purpose is to elicit a confession—our adversary system begins to operate, and, under the circumstances here, the accused must be permitted to consult with his lawyer." 378 U.S. at 492, 84 S.Ct. at 1766.

4. 351 F.2d at 901.

the culprit be known before the crime or the crime before the culprit. In either case the investigator is attempting to develop evidence for the purpose of criminal prosecution and conviction.[5]

Further reason to believe the *Kohatsu* distinction insubstantial may be found by examining the evolution of a criminal prosecution. *Kohatsu* emphasizes the exploratory nature of a criminal tax investigation, to determine "whether in fact any crime had been committed." Actually, the taxpayer who becomes the subject of a criminal tax investigation is suspected of tax fraud prior to the inception of the criminal investigation. Suspicion of criminal acts centers upon him at least by the time the fraud referral report of the civil agent is accepted by the Intelligence Division. Potential criminal prosecution is contemplated from the start of the criminal investigation, and the Special Agent's task is to prepare the evidence necessary to justify and support that prosecution.

Two other post-*Escobedo*, pre-*Miranda* cases which held *Escobedo* inapplicable to criminal tax investigations can readily be distinguished. In United States v. Spomar, 339 F.2d 941 (7 Cir. 1965), cert. denied 380 U.S. 975, 85 S.Ct. 1336, 14 L.Ed.2d 270 (1965), the Court did not consider *Escobedo*. Rickey v. United States, 360 F.2d 32, 33 (9 Cir. 1966) was merely a per curiam application of *Kohatsu*.

As previously indicated, some courts have found further ground for refusing to apply the Sixth Amendment right to counsel enunciated in *Escobedo* to non-custodial interrogations in a much quoted footnote in *Miranda*. After stating that a suspect who is in custody or who is deprived of his freedom in any significant way must be warned of his constitutional rights before interrogation, the Court noted that custody or significant deprivation of freedom was

what it meant in *Escobedo* when it used the phrase, "when the investigation focuses on the accused."

Cases since *Miranda* have adopted the "custody" language of *Miranda* to limit its holding to situations where the suspect was in custody or similarly restrained.[6] The *Miranda* footnote has been used to apply the same restriction to *Escobedo*. United States v. Fiore, 258 F.Supp. 435 (W.D. Pa. 1966); United States v. Hill, 260 F.Supp. 139 (S.D.Cal.,1966).

That the Court did not intend the custody standard to be raised to constitutional significance seems clear from a reading of the total opinions in both *Escobedo* and *Miranda*. Both cases involved custodial interrogations. In both cases, as in the others decided with *Miranda,* the detention of the suspect permitted the inference that the police suspected him of being the perpetrator of the crime under investigation. Detention constituted tangible evidence that the adversary process had begun.

The inception of the adversary process was the core of the Court's concern in *Escobedo* and *Miranda*. While, as the Court pointed out, custody may have a coercive effect, it is also an easily recognizable point at which the adversary process can be said to have begun. The Court said in *Miranda,*

> "It is at this point that our adversary system of criminal proceedings commences, distinguishing itself at the outset from the inquisitorial system recognized in some countries. Under the system of warnings we delineate today * * * the safeguards to be erected about the privilege must come into play at this point."[7]

While criminal tax investigations by their nature are almost always devoid of anything that smacks of custody, the administrative procedure of the Internal Revenue System offers at least one

5. A prophetic refutation of the then unborn *Kohatsu* distinction is contained in The Constitutional Right to Counsel in Tax Investigations, 33 U.Chi.L.Rev. 134, at 140 (1965).

6. See the cases cited in note 1, supra.

7. 384 U.S. at 477, 86 S.Ct. at 1629, 16 L. Ed.2d 694.

equally tangible point at which the adversary process can be said to have begun. The formal, internal shift from Internal Revenue Agents to Special Agents of the Intelligence Division converts the investigation from civil to criminal. At this point the taxpayer is under suspicion of tax fraud, the investigatory power of the government is directed against him with the intent of developing evidence to convict him and his need to know his rights is quite as real and urgent as that of the suspect under custodial interrogation.

There were, of course, a number of cases prior to *Escobedo* in which the courts generally held that admissibility of statements obtained during a criminal tax investigation was determined by whether the statements were given voluntarily and not induced by fraud, coercion, or deceit. United States v. Achilli, 234 F.2d 797 (7 Cir., 1956). The investigating agents were not required to warn the taxpayer of his constitutional rights and the fact that the taxpayer was unaware of them or that the agents were conducting a criminal investigation was held to be irrelevant to the determination of voluntariness. United States v. Spomar, 339 F.2d 941 (7 Cir. 1965).

The authority for these and other similar decisions [8] rests on two earlier Supreme Court decisions, Wilson v. United States, 162 U.S. 613, 16 S.Ct. 895, 40 L.Ed. 1090 (1896), and Powers v. United States, 223 U.S. 303, 32 S.Ct. 281, 56 L.Ed. 448 (1912). A reading of these two cases suggests that both have been overruled by *Miranda.* Both cases involved defendants who made certain admissions during the course of preliminary hearings before United States Commissioners. In neither case was the defendant advised of his right to counsel or his privilege against self incrimination. At the time the admissions were made each defendant was under arrest. The adversary process had begun, the defendants were in custody and *Miranda* would seem clearly to apply. Accordingly, the cases predicated upon them would no longer appear to be persuasive.

In summary, we hold 1) that a taxpayer being investigated for purposes of criminal tax prosecution is entitled to knowledge of that fact and of his constitutional rights and privileges just as any other suspect being interrogated in contemplation of his possible criminal prosecution; 2) that custody or lack thereof is not the sine qua non of whether or not constitutional rights and privileges have knowingly and voluntarily been waived; 3) that an adequate constitutional admonition must be given by revenue agents when the investigation is converted from civil to criminal, customarily at such time as the case is transferred to the Intelligence Division; and 4) that any information or evidence obtained directly or indirectly solely from the taxpayer after this date in the absence of such a warning has not been disclosed pursuant to a knowing and voluntary waiver of his constitutional rights and privileges, unless made in the presence of his counsel, and must therefore be suppressed.

With respect to all of the foregoing, it should be noted that CCH Federal Tax Service Release 29–70, dated May 24, 1967, ¶ 6637, quoting IRS Document No. 5661 (Rev. 11–66), indicates that Special Agents of the Intelligence Division are now required at first interrogation to read to a taxpayer a "Statement of Rights: which contains the substance of the constitutional admonition specified in *Miranda.* As a result, the taxpayer no longer will be unaware that the case has been converted from a civil to a criminal investigation and will be in a

---

8. Cf. Montgomery v. United States, 203 F. 2d 887 (5 Cir. 1953); Hanson v. United States, 186 F.2d 61 (8 Cir. 1950); United States v. Burdick, 214 F.2d 768 (3 Cir. 1954); Turner v. United States, 222 F.2d 926 (4 Cir. 1955); United States v.

Spomar, supra n. 1; Greene v. United States, 296 F.2d 841 (2 Cir. 1961); United States v. Sclafani, 265 F.2d 408 (2 Cir. 1959); Kohatsu v. United States, supra n. 1.

position either to make a knowing and voluntary waiver of his rights or to rely upon them.

Our remaining task is to determine, in light of the above discussion, which documents and statements given by the defendant after the initiation of the criminal investigation should be suppressed. This task is practically, if not theoretically, complicated by the fact that certain statements by the defendant after the initiation of the criminal investigation were merely repetitious of statements which he gave to agents conducting the civil investigation. Indeed, much of defendant's records which were microfilmed during the criminal investigation had been examined by civil agents prior to the criminal investigation.

In the interest of a consistent application of the exclusionary rule set down by *Miranda,* we hold that all statements and documents which were disclosed by the defendant to the agents solely during the course of the criminal investigation must be suppressed. In addition, any independent evidence obtained as a result of information given by the defendant solely during the criminal investigation must also be suppressed.

Our exclusion of statements and documents obtained from the defendant solely during the criminal investigation in no way impedes the introduction of statements or documents which the defendant volunteered prior to the initiation of the criminal investigation or information developed therefrom. Nor does it bar evidence obtained from sources independent of such interviews with the defendant.

We come to the final issue of whether the presence of counsel dispenses with the need to inform the suspect of his privilege against self incrimination. In the instant case, this question arises with respect to statements made by the defendant during the conference at the downtown IRS offices at which his counsel was present.

Absent a showing of incompetence of counsel, it may be presumed that any such statements were made with adequate protection for defendant's constitutional rights. Accordingly the motion to suppress such statements is denied.

An order consistent with all of the foregoing will enter.