**UNITED STATES of America, Plaintiff,**

**v.**

**Archie L. WAINWRIGHT, Defendant.**

**Crim. A. 67–CR–74.**

United States District Court
D. Colorado.
March 11, 1968.

Lawrence M. Henry, U. S. Atty., and Donald E. Cordova, Asst. U. S. Atty., Denver, Colo., for plaintiff.

Robert D. Inman and Melvin A. Coffee, Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

ARRAJ, Chief Judge.

Defendant Archie L. Wainwright has been charged in a four count indictment with violating Section 7201 of the Internal Revenue Code of 1954, Title 26 U.S.C. § 7201, in that he falsely and fraudulently filed joint income tax returns on behalf of himself and his wife for the years 1961 through 1964. He now moves for the return and suppression of all books, documents, papers, records, memoranda and statements delivered explained, or given by him or through his agents, together with all potential evidence, the leads to which were acquired by the Government, up to and including April 7, 1966. In the motion to suppress defendant contends that he was not adequately advised of his constitutional rights under the Fourth, Fifth and Sixth Amendments to the United States Constitution.

A hearing was held in Court and from the evidence the following facts appear. Defendant is in the service station business. In September 1963, Glen Smith, a revenue agent of the United States Internal Revenue Service, called at defendant's residence and stated that he was to audit defendant's income tax returns for some particular years to determine whether deficiencies should be assessed against the taxpayer. He was allowed to take some of defendant's books and records at that time. During the next few months he examined these

records, at times working with the book-keeper employed by the defendant.

It is the practice of the Internal Revenue Service, when the revenue agent in the civil division has reason to believe that the taxpayer under investigation has committed a criminal violation, to refer the case to the Intelligence Division where jurisdiction is limited to criminal matters. After consulting with his superiors in the civil department, Agent Smith, in November 1964, did refer the case of defendant to the criminal division. Special Agent Duane Gibbs was assigned to the case to investigate for possible criminal prosecution, but Gibbs did not meet defendant until June 29, 1965 when he went to his home to secure more records and books of the defendant. Smith continued to work with Gibbs in the investigation.

On April 7, 1966 defendant was asked to appear at a Question and Answer session; present at the session were the defendant and his attorney, Mr. Robert Caddes, Revenue Agent Smith and Special Agent Robert Brumbaugh. It was not until this point in the investigation that Mr. Wainwright was clearly advised of his constitutional rights. The testimony was recorded and the deposition shows that before questioning the Special Agent advised defendant of his right to refuse to answer any question or make any statement which might tend to incriminate him, and informed him that anything he said or any evidence which he produced could be used against him in any proceeding, criminal or otherwise.

At the hearing on the motion to suppress we disposed of the issue insofar as it relates to the evidence received at the Question and Answer session. There, the defendant, with his attorney present, was advised of his constitutional rights, and we held that the evidence secured at that time will be admissible at the trial of the cause. The issue reserved at the hearing, to which we must now turn, is whether the evidence obtained by the Government, after defendant's case was

referred to the Intelligence Division of the Internal Revenue Service and before the Question and Answer session, must be suppressed because of the failure of the Special Agent to advise defendant of his constitutional rights.

Defendant contends that the decisions in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), and Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), control the issue before us. A valid waiver of constitutional rights by a person suspected of crime can be made only if he is properly advised of these rights, which was not done at the time defendant was first suspected of committing a crime and under investigation by the criminal division of the Internal Revenue Service. It is the Government's contention that Escobedo and Miranda do *not* apply to income tax investigations, because in the tax situation the perpetrator of the suspected crime is known and the authorities are seeking to determine if a crime has in fact been committed. The Government also argues that the investigation and interrogation in the tax situation is non-custodial thereby making defendant's authority inapplicable.

The Tenth Circuit Court of Appeals has not decided this issue, but the Government's position has support in some of the other circuits. United States v. Maius, 378 F.2d 716 (6th Cir. 1967), cert. denied 389 U.S. 905, 88 S.Ct. 216, 19 L.Ed.2d 219 (1967); Schlinsky v. United States, 379 F.2d 735 (1st Cir. 1967), cert. denied 389 U.S. 920, 88 S.Ct. 236, 19 L.Ed.2d 265 (1967); Selinger v. Bigler, 377 F.2d 542 (9th Cir. 1967), cert. denied 389 U.S. 904, 88 S.Ct. 212, 19 L.Ed.2d 218 (1967); Mathis v. United States, 376 F.2d 595 (5th Cir. 1967), cert. granted 389 U.S. 896, 88 S.Ct. 224, 19 L.Ed.2d 213 (1967); Kohatsu v. United States, 351 F.2d 898 (9th Cir. 1965); United States v. Silverstein, 271 F.Supp. 975 (D.N.H.1967). Most of the cases follow Kohatsu v. United States, supra, which was decided after Escobedo and before Miranda. Some of the cases

are distinguishable from the case at bar; for example, in Mathis, supra, the admonition was given by the special agent at the proper time and the suspect gave no further information, although at the time the taxpayer was interviewed by the civil agent he was in prison on an unrelated charge. In Schlinsky, supra, when the possibility of criminal liability appeared and the case was turned over to the special agent, the taxpayer was properly advised that he need not answer any questions or produce any records that might incriminate him. In Maius, supra, the Court stated "Until we are told by superior authority that a citizen's constitutional rights are imperiled by such procedure, we are constrained to hold that the evidence thereby obtained is admissible in the ensuing criminal trial."

██ We do not agree with the Government's position on this issue and we do not feel constrained to follow the authority upon which they rely. Defendant Wainwright became an "accused" at the time his case was referred to the Intelligence Division of the Internal Revenue Service. Any attempt by us, in considering these facts, to distinguish a criminal tax investigation from any other criminal investigation where a crime is known to have been committed is a distinction without a difference. We conclude that the defendant was not adequately advised of his constitutional rights to remain silent and to the assistance of counsel during the period when he was first visited by the Special Agent and the Question and Answer session on April 7, 1966. The evidence obtained by the Government during that time was procured in violation of fundamental standards of fairness and it must therefore be suppressed. See United States v. Turzynski, 268 F.Supp. 847 (N.D.Ill.1967); United States v. Kingry, 19 A.F.T.R.2d 762 (N.D.Fla.1967); United States v. Schoenburg, 19 A.F. T.R.2d 348 (D.Ariz.1966).

██ Judge Will's Memorandum Opinion in United States v. Turzynski, supra, is an excellent analysis of the issue before us, and it places great doubt on the arguments and authority of the Government. We think his analysis is a correct one. The opinion states 268 F.Supp. at pp. 850–851

We hold that once a taxpayer becomes the subject of a criminal tax investigation, as evidenced by the referral of the investigation to the Intelligence Division or otherwise, our adversary process of criminal justice has become directed against him as a potential criminal defendant. Any evidence obtained from him is admissible only if the taxpayer furnished it after knowingly and voluntarily waiving his constitutional rights and privileges. Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964); Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694 (1966).

To hold otherwise would lead to the anomalous conclusion that a person suspected of bank robbery, sale of narcotics, murder, rape or other serious crime is entitled to greater protection of his constitutional rights than a person suspected of violating the internal revenue laws. For when the silent transition from civil to criminal investigation takes place in a tax case, the taxpayer being interrogated and asked to furnish his books and records is just as surely a prime suspect and candidate for criminal prosecution as the individual under interrogation as a suspect for other crimes.

It further states

Whether a suspect is induced to incriminate himself by a combination of ignorance of his rights and the coercive atmosphere of custody, or by ignorance of his rights combined with the inference that the purpose of the interrogation is simply to ascertain his dollars and cents liability for taxes, the result is the same, an involuntary self-incrimination. In some respects the tax investigation is more insidious and dishonest than the custodial interroga-

tion, for the suspect in custody well knows his interrogators are seeking evidence to convict him of a crime while a tax suspect is permitted and even encouraged to believe that no criminal prosecution is in contemplation. The Internal Revenue Agent who has discussed possible deficiencies with the taxpayer continues active in the investigation augmented by the Special Agent whose presence and purpose as a criminal investigator is never disclosed to the suspect.

It should be noted that the Internal Revenue Service has recently set forth procedures which come part of the way toward protecting the constitutional rights of persons suspected of criminal tax violations. See Mertens Current Tax Highlights, Vol. X, No. 1, dated November 22, 1967. The following instructions have been issued to the special agents.

(A) On initial contact with the taxpayer the special agent is to produce his credentials and state: "As a special agent, I have the function of investigating the possibility of criminal tax fraud."

(B) If the potential criminal aspects of the matter are not resolved by preliminary inquiries and further investigation becomes necessary, the special agent is required to advise the taxpayer of his constitutional rights to remain silent and to retain counsel.

(C) If it becomes necessary to take a person into custody, special agents must give a comprehensive statement of rights before any interrogation. This statement warns a person in custody that he may remain silent and that anything he says may be used against him. He is also told that he has the right to counsel before making a statement or answering any questions, and that if he cannot afford counsel he can have one appointed.
* * *

There are no apparent difficulties in requiring the Internal Revenue Agents to adequately inform the taxpayer of his constitutional rights at the initial contact with them after the investigation has been referred from the civil to the criminal division. This is a very simple procedure, and nothing less is required by law.

Remaining to be determined is the question of which books, records, and statements given by the defendant after the initiation of the criminal investigation should be suppressed. The question is complicated by the fact that some of the evidence procured by the agents after the case was referred to the Intelligence Division was a duplication of the evidence obtained by the civil agent before the referral. In fact, some of the same records were examined both before and after the Special Agent was assigned to the case.

We feel that it is incumbent upon the Government to show that evidence used by them in the prosecution of this case is not "tainted" by the failure to adequately advise the defendant of his constitutional rights. All of the statements, books, records and documents which were disclosed by the defendant to the agents solely during the criminal investigation and up to April 7, 1966, the Question and Answer session, must be suppressed. Of course, any other evidence procured as a result of information given by defendant during that time must also be suppressed. Our exclusion of this particular evidence does not foreclose the introduction of books, records or statements which the defendant volunteered before the beginning of the criminal investigation, nor does it bar evidence obtained from other sources. It is therefore

Ordered that the motion to suppress be and hereby is granted in accordance with the above.