**UNITED STATES of America, Plaintiff,**

v.

**Italo CHARAMELLA, Defendant.**

**Crim. A. No. 1885.**

United States District Court
D. Delaware.
Nov. 19, 1968.

———◆———

Alexander Greenfeld, U. S. Atty., Wilmington, Del., for plaintiff.

Joseph H. Geoghegan, Potter, Anderson & Corroon, Wilmington, Del., for defendant.

## OPINION

STEEL, District Judge.

Defendant was indicted on March 7, 1968, for willfully attempting to evade federal income taxes for the calendar years 1961, 1962 and 1963, in violation of 26 U.S.C. § 7201.

On March 19, 1968, defendant filed a motion, pursuant to Rule 41(e), Fed.R.Crim.P., to suppress certain evidence against him claiming that the Government had illegally seized it without warrant and in violation of his constitutional rights under the Fourth, Fifth and Sixth Amendments of the Constitution of the United States. The same motion also asked the Court to order a return of this evidence, which consists of photocopies of defendant's records made by the Government. These records had been obtained from defendant during the course of the Government's investigation of his income tax returns. Defendant has requested a hearing "on the factual issues related to the seizure of such evidence." Such a hearing is authorized by Rule 41 (e) if there is any issue of fact necessary to the decision of the motion.

In support of the motion, defendant on April 24, 1968, filed an affidavit in which he stated that he met with agents of the Internal Revenue Service several times at his office, that he handed over various personal records at their request, and that he received from them inadequate warnings of his constitutional rights against self-incrimination and to have counsel. (Par. 11, 17.)

On September 26, 1968, defendant moved under Rule 17.1, Fed.R.Crim.P., for a pre-hearing conference, to consider the procedural and evidentiary problems that might arise at the hearing on defendant's motion to suppress and return the copies of the documents. The same motion prayed, under Rule 17(a), (c), Fed.R.Crim.P., for the issuance and service of a subpoena duces tecum on the two agents of the Internal Revenue Service who investigated defendant's income tax returns and their group supervisor. The purpose of the subpoena was to require these persons to appear and produce at the pre-hearing conference various documents relating to the investigation of defendant's income tax returns, for the purpose of permitting defendant's attorney to inspect them.[1] The reason

---

1. The motion described the documents to be covered by the subpoena in the following terms:

"II. * * * all documents, memoranda, diary entries, notes and papers which would indicate the time, place and persons involved in:

(A) The initiation and conduct of the civil audit of defendant's federal income tax returns for the year[s] 1960 through 1963, and

. (B) The initiation and conduct of the criminal investigation of defendant's fed-

for defendant attempting to inspect the documents is alleged in paragraph IV. of the motion as follows:

"IV. The documents pertain to the proof of when and the circumstances under which the civil audit of defendant's federal income tax liabilities for the years 1960 through 1963 reached an accusatory or adversary stage and focused on defendant as one suspected of having violated the federal criminal income tax laws thus giving rise to defendant's constitutional protections under the Fourth, Fifth and Sixth Amendments to the Constitution of the United States. Cf. Escobedo v. Illinois, 378 U.S. 478, [84 S.Ct. 1758, 12 L.Ed.2d 977] (1964); Miranda v. Arizona, 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694] (1966); United States v. Turzynski, 268 F.Supp. 847 (N.D.Ill.1967); U. S. v. Kingry, 67–1 USTC ¶ 9262 (N.D.Fla.1967)."

The motion further alleged that the documents are not otherwise procurable reasonably in advance of the hearing on defendant's motion to suppress, that defendant cannot properly prepare for that hearing without a pre-hearing inspection of the documents, and that the failure of defendant to obtain such inspection will tend to unreasonably delay the hearing.

The pre-hearing conference was held on October 10, 1968. Despite defendant's motion to have the documents subpoenaed and inspected in advance of the conference, no order for the issuance of the subpoena was entered prior to that time. At the conference the Government resisted the motion for the issuance of the subpoena *duces tecum* upon the ground that many of the documents to be covered by it were internal Govern-

ment documents and hence protected under the second sentence of Rule 16 (b), Fed.R.Crim.P. Defendant argued that it had shown good cause for the documents being produced under Rule 17(c) even though they were internal Government records.

■ At the conference the parties agreed, with the Court's approval, that the documents which defendant sought to have produced for its inspection should be submitted to the Court so that it might determine whether any of the documents were internal Government documents within the meaning of Rule 16(b) and if so whether they were protected by that Rule.[2] We believe that Rule 17(c) authorizes production and inspection of internal Government documents, among others, for good cause at the Court's discretion, if the documents are sought in a bona fide attempt to obtain evidence. Bowman Dairy Co. v. United States, 341 U.S. 214, 71 S.Ct. 675, 95 L.Ed. 879 (1951); United States v. Wolfson, 294 F.Supp. 279 (D.Del., Nov. 27, 1968); United States v. Jannuzzio, 22 F.R.D. 223 (D.Del.1958); United States v. Iozia, 13 F.R.D. 335 (S.D.N.Y.1952); 8 Moore's Federal Practice ¶ 17.07 (2d ed. 1968). Here it appears that such was the defendant's purpose.

■ If the documents sought to be produced and inspected pursuant to Rule 17(c) can have no relevance or evidentiary value to defendant in the conduct of his defense, the Court should decline to permit a pre-trial inspection. United States v. Jannuzzio, supra; United States v. Iozia, supra.

Defendant attempts to show that the documents sought are material and rele-

---

eral income tax returns for the years 1960 through 1963, and

(C) Any communication formal or informal between personnel in the Civil Audit Division and personnel in the Criminal Intelligence Division of the Internal Revenue Service relative to the civil audit and criminal investigation of defendant's federal income tax returns for the years 1960 through 1963. .

III. The requested documents should include but is not limited to the following:

(A) Memorandum prepared by Revenue Agent John Graham in July 1964 addressed to Criminal Intelligence.

(B) Treasury Department Form 2797 referral by Civil Audit Division to Criminal Intelligence Division recommending criminal investigation of defendant."

2. This was done.

vant to his case because they will help him prove when and under what circumstances the civil audit of defendant's federal income tax liabilities for the years 1960 through 1963 "reached an accusatory or adversary stage and focused on defendant as one suspected of having violated the federal income tax laws, thus requiring *Miranda* warnings."[3] Defendant's Letter Memorandum, October 18, 1968.

■ For these documents to be relevant and evidentiary, the defendant must actually have been entitled to *Miranda* warnings when the investigation "reached an accusatory or adversary stage." If he was not then entitled to such warnings, the documents relating to the time when the accusatory or adversary stage was reached are irrelevant.

■ Miranda v. Arizona, 384 U.S. 436, 478–479, 86 S.Ct. 1602, 1630 (1966) requires that the constitutional warnings be given to a defendant before he is questioned only when he has been "taken into custody or otherwise deprived of his freedom by the authorities in any significant way." It is true that earlier in Escobedo v. Illinois, 378 U.S. 478, 492, 84 S.Ct. 1758, 1766, 12 L.Ed.2d 977 (1963), the Court said:

> "We hold only that when the process shifts from investigatory to accusatory —when its focus is on the accused and its purpose is to elicit a confession— our adversary system begins to operate, and, under the circumstances here, the accused must be permitted to consult with his lawyer."

The Court in *Miranda*, however, interprets this language by stating that "custodial interrogation" was what it had meant when it spoke in *Escobedo* of an investigation which had focused on an accused. 384 U.S. at 444 n. 2, 86 S.Ct. 1602.

The Court in *Miranda* takes pains to distinguish "the compelling atmosphere inherent in the process of in-custody interrogation," 384 U.S. at 478, 86 S.Ct. at 1630, from questioning "conducted by police officers visiting the house or place of business of the suspect." 384 U.S. at 478 n. 46, 86 S.Ct. at 1630 (quoting Chalmers v. H. M. Advocate, [1954] Sess.Cas. 66, 78 (J.C.)). The need for warnings concerning the suspect's rights when he is questioned in custody as contrasted with interrogations in his own home or office is again pointed out by the Court, 384 U.S. at 449–450, 86 S.Ct. at 1615 (quoting O'Hara, Fundamentals of Criminal Investigation 99 (1956)):

> "In his own home [the suspect] may be confident, indignant, or recalcitrant. He is more keenly aware of his rights and more reluctant to tell of his indiscretions or criminal behavior within the walls of his home. Moreover his family and other friends are nearby, their presence lending moral support. In his own office, the investigator possesses all the advantages. The atmosphere suggests the invincibility of the forces of the law."

■ Hence, under the present state of the law, as enunciated in *Miranda*, no constitutional warnings need be given to one suspected of an income tax delinquency even after the suspicion has reached an accusatory or adversary stage, if the suspect is neither in custody nor deprived of his freedom of movement by the authorities in any significant way.

This conclusion is supported by many decisions. See, e. g., United States v. Mackiewicz, 401 F.2d 219 (2d Cir., July 10, 1968), cert. denied, 393 U.S. 923, 89 S. Ct. 253, 21 L.Ed.2d 258 (1968); Schlinsky v. United States, 379 F.2d 735 (1st Cir. 1967), cert. denied, 389 U.S. 920, 88 S.Ct. 236, 19 L.Ed.2d 265 (1967); United States v. Maius, 378 F.2d 716 (6th Cir.

---

3. These warnings are that the suspect "has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." Miranda v. Arizona, 384 U.S. 436, 479, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966).

1967), cert. denied, 389 U.S. 905, 88 S.Ct. 216, 19 L.Ed.2d 219 (1967); United States v. Mancuso, 378 F.2d 612 (4th Cir. 1967), modified on other grounds, 387 F.2d 376 (1967), cert. denied, 390 U.S. 955, 88 S.Ct. 1051, 19 L.Ed.2d 1149 (1968); Morgan v. United States, 377 F.2d 507 (1st Cir. 1967); Selinger v. Bigler, 377 F.2d 542 (9th Cir. 1967), cert. denied, 389 U.S. 904, 88 S.Ct. 212, 19 L.Ed.2d 218, reh. denied, 389 U.S. 998, 88 S.Ct. 462, 19 L.Ed.2d 503 (1967); Rickey v. United States, 360 F.2d 32 (9th Cir. 1966), cert. denied, 385 U.S. 835, 87 S.Ct. 80, 17 L.Ed.2d 69 (1966); Kohatsu v. United States, 351 F.2d 898 (9th Cir. 1965), cert. denied, 384 U.S. 1011, 86 S. Ct. 1915, 16 L.Ed.2d 1017 (1966), reh. denied, 385 U.S. 891, 87 S.Ct. 15, 17 L.Ed. 2d 122 (1966); United States v. White, 293 F.Supp. 692 (E.D.Pa., Aug. 13, 1968); United States v. Jaskiewicz, 278 F.Supp. 525 (E.D.Pa.1968); United States v. Basil, 268 F.Supp. 1018 (S.D. Fla.1967); United States v. Bachman, 267 F.Supp. 593 (W.D.Pa.1966); United States v. Hill, 260 F.Supp. 139 (S.D.Cal. 1966); United States v. Fiore, 258 F. Supp. 435 (W.D.Pa.1966); see United States v. Morton Provision Co., 294 F. Supp. 385 (D.Del. Nov. 4, 1968).

There are at least three post-*Miranda* District Court cases which have held that tax agents must warn a taxpayer of his constitutional rights once the taxpayer has become the subject of a criminal investigation even though at the time the taxpayer is neither in custody nor otherwise deprived significantly of his freedom. United States v. Turzynski, 268 F.Supp. 847 (N.D.Ill.1967); United States v. Wainwright, 284 F.Supp. 129 (D.Colo.1968); [4] United States v. Kingry, 67-1 U.S.T.C. ¶ 9262 (N.D.Fla.1967).[5] In United States v. Turzynski, supra, the Court said (268 F.Supp. at 852-853):

"In *Miranda,* the Court was not concerned solely with the protection of constitutional rights in a custodial atmosphere. The Court enunciated the broader principle that when the investigative power of the government is directed toward an individual with the intent to obtain incriminating evidence from him, that individual should be afforded an opportunity knowledgeably to exercise his constitutional rights.

\* \* \* \* \* \*

\* \* \* [T]he Court did not intend that custody standard to be raised to constitutional significance \* \* \*. The inception of the adversary process was the core of the Court's concern in *Escobedo* and *Miranda.*"

In reaching this conclusion, *Turzynski* in essence rejected *Miranda's* explanation that "custodial interrogation" was what the Supreme Court meant when it spoke in *Escobedo* of "an investigation which had focused on an accused." Miranda v. Arizona, supra, 384 U.S. at 444 n. 2, 86 S.Ct. at 1612. It may be that at some future day the Supreme Court will lay down new constitutional guidelines consistent with the *Turzynski* view.[6] When, however, the Supreme Court recently decided Mathis v. United States, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968), it reaffirmed its decision in *Miranda* that the constitutional warnings should be

---

4. *Wainwright* approves and adopts the reasoning of United States v. Turzynski, supra.

5. The report of *Kingry* in 67-1 U.S.T.C. ¶ 9262 is not a written opinion, but a transcript of a hearing on a motion to suppress evidence before the District Court. The District Court granted the motion to suppress on the supposed basis of *Miranda,* rejecting the Government's assertion in oral argument that *Miranda* applied only to custodial interrogations.

6. Mr. Justice Douglas dissented from the denial of certiorari in Thomas v. United States, 386 U.S. 975, 87 S.Ct. 1164, 18 L.Ed.2d 133 (1967) stating:

"This is not an in-custody case, but it is a coercive examination of a taxpayer at a critical preliminary hearing, so to speak, and the question presented apparently is a recurring one."

Mr. Justice Douglas also voted to grant certiorari in *Maius, Morgan, Selinger* and *Kohatsu,* supra, and Mr. Justice Fortas joined him in voting for certiorari in *Schlinsky,* supra.

given to "one in custody who is interrogated by officers about matters that might tend to incriminate him." Mathis v. United States, supra, 391 U.S. at 3, 88 S.Ct. at 1504.[7]

■ That defendant was not a person entitled to the constitutional warnings required by the present Supreme Court decisions is apparent from defendant's affidavit filed on April 24, 1968. It states that defendant first met with Revenue Agent Graham in January, 1964, at defendant's office when Graham commenced an audit of his 1960 income tax return. Revenue Agent Graham requested defendant's personal books and records and defendant gave them to him. Shortly thereafter he returned to defendant's office and requested defendant's office books and records, which defendant gave him. After several weeks defendant requested return of his accounts receivable ledger for purposes of billing and posting accounts. Several weeks later Graham again took the accounts receivable ledger and kept it for a substantial period of time and returned it at defendant's request. To the best of defendant's recollection, his meetings with Revenue Agent Graham at defendant's office covered the period from January, 1964, to the latter part of May, 1964. Defendant states that at no time during this or any earlier period did Revenue Agent Graham advise him of his constitutional right to counsel. At no time did defendant authorize Revenue Agent Graham to make copies of any of his books, records or workpapers.

The affidavit further states that the next time defendant saw Revenue Agent Graham was at defendant's office in January, 1965, when Graham introduced defendant to Special Agent Camplone. The meeting was "very brief." Special Agent Camplone told defendant that his job was the investigation of criminal income tax matters and that anything defendant said could be held against him. Neither Special Agent Camplone nor Revenue Agent Graham advised him at any time that he had a right to seek counsel or that he did not have to produce his books, records and workpapers unless legal requirements for their production were met. Revenue Agent Graham then asked defendant to give him defendant's accounts receivable ledger for the years 1960 through 1963 and patients' daybook for 1963. Defendant instructed his nurse to do so. At no time did Special Agent Camplone read a statement advising defendant of his constitutional rights against self-incrimination and his constitutional right to counsel.

The affidavit finally asserts that defendant sought legal counsel with respect to the tax investigation in January, 1965. Defendant's counsel, by letter to the District Director of Internal Revenue, demanded return of all defendant's records "without photocopying." [8]

Accepting the facts alleged in defendant's affidavit as true and considering them in the light most favorable to defendant, it is clear that when defendant's records were obtained by the Government, the defendant was under no custodial restraint nor was he significantly deprived of his freedom. For this reason none of the constitutional *Miranda* warnings which the defendant claims should have been given to him were required. This is so even though Government's investigation of defendant's federal income tax liabilities may have reached an accusatory or adversary stage and focused on the defendant as one sus-

7. In *Mathis*, the defendant was interviewed by tax agents as part of a routine civil tax investigation without having been given *Miranda* warnings. At the time of these interviews he was incarcerated serving an unrelated state sentence. Incriminating statements and documents were obtained from him during these interviews. The Court held that *Miranda* warnings should have been given to the defendant during the routine civil investigation interviews because he was in custody.

8. Defendant's records were returned to him in February, 1965. The Government admits that it has retained photocopies of the originals of these records.

pected of having violated the federal income tax laws. Since the production of documents which the defendant · seeks from the Government is solely to establish this irrelevant fact of the investigation's shift to the accusatory stage the motion for the issuance of the subpoena *duces tecum* will be denied.

Because of the Court's view in this regard, it has not examined any of the documents which the Government has delivered to it, notwithstanding its initial intention to do so. The documents will be turned over to the Clerk with instructions to hold them for eleven days from the time when an order in this opinion is entered. If no appeal is taken from the order, the documents are to be returned to the United States Attorney's office at the end of such period for such use as it may desire to make of them, short of their destruction.[9]

Defendant's motion to suppress, while seemingly based solely on the failure of the Revenue Agents to give him the *Miranda* warnings may perhaps not have been intended to be so restricted, for it alleges broadly that the evidence "was illegally seized without warrant, and in violation of the defendant's constitutional rights as guaranteed by the Fourth, Fifth and Sixth Amendments of the Constitution of the United States." Since defendant has requested a hearing on the factual issues related to the alleged seizure, such a hearing will be held provided that the attorney for defendant within five days from the filing of this opinion still desires to have one and notifies the Court to that effect. In the absence of such notice the determination of the motion to suppress as evidence the photocopies of writings taken from defendant will be denied. If a hearing is requested, the decision on the motion to suppress will be deferred until after the hearing has been held.

Let an order consistent with this opinion be submitted.

9. This disposition allows for the retention of the papers by the Clerk for the ten-day period for filing notice of appeal allowed under Rule 37(a) (2), Fed.R.Crim.

P., plus one day. In making this disposition, we do not reach the question of whether the order is appealable.