**The UNITED STATES of America, Plaintiff,**

v.

**Larry Joseph CASIAS, Defendant.**

**Crim. A. No. 69–CR–174.**

United States District Court
D. Colorado.

Dec. 3, 1969.

---

33. 394 F.2d 402 (2d Cir. 1968).

34. 393 F.d at 727 n.2.

35. 394 F.2d at 404 n.4.

James L. Treece, U. S. Atty., and Milton C. Branch, Asst. U. S. Atty., Denver, Colo., for plaintiff.

Elmer Lee Hamby, Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

WILLIAM E. DOYLE, District Judge.

Defendant Larry Joseph Casias was convicted for a violation of the Universal Military Training and Service Act, 50 U.S.C.A. App. § 462(a), in that he failed to comply with an order of his local board to report for assignment to civilian employment. Defendant has moved for a new trial or, in the alternative, a judgment of acquittal.

Defendant had claimed a ministerial deferment (class IV–D), but on January 24, 1967, his local board classified him as a conscientious objector available for civilian work contributing to the maintenance of the national health, safety or interest (class I–O). Pursuant to this classification, and on October 28, 1968, defendant was mailed Selective Service System Form 153, Order to Report for Civilian Work and Statement of Employer, requiring defendant to report to

his local board for instructions to proceed to his place of employment. Defendant did not report to his local board as ordered, did not report for work at the job designated, and as a result the Colorado State Director of Selective Service forwarded his file to Washington for a determination as to whether or not defendant should be reported to the United States Attorney for prosecution.

On January 6, 1969, the assistant general counsel of the Selective Service System wrote the state director and indicated that the notations on defendant's classification questionnaire did not state whether a Notice of Classification (SSS Form 110), informing defendant of his I–O classification and his right to appeal, had ever been mailed.[1] The letter concluded:

> We presume this is a clerical oversight, but cannot recommend on prosecution until we can be sure registrant's appeal rights were given.

On January 8, 1969, the executive secretary of defendant's local board sent defendant the following letter:

> A question has arisen regarding your classification. Will you please come to this office at your earliest convenience and bring with you your form 110— Notice of Classification.

Pursuant to this request defendant brought his Form 110 to the local board on January 13. The Form showed that it had been mailed to defendant on January 24, 1967. This information was sent to National Headquarters, and the recommendation was made to initiate this prosecution.

 Failure of a local board to strictly and faithfully comply with procedural regulations will invalidate a resultant order of that board. Robertson v. United States, 404 F.2d 1141 (5th Cir. 1968). Each registrant has the right to appeal a newly considered classification (32 C.F.R. § 1625.13). Obviously, if a

---

1. SSS Form 110 contains a statement of a registrant's right to a personal appearance or appeal. The mailing of a notice by a local board to a registrant at the address last reported by him constitutes notice of the contents of the communication, whether or not he actually receives it. 32 C.F.R. § 1641.3.

registrant is not mailed a notice of classification and right to appeal, he will not be aware that there has been a classification from which he might appeal. Failure of the board to mail this notice will invalidate the board's subsequent order, or the registrant's conviction based upon failure to comply with that order. *See* Robertson v. United States, *supra*. In determining whether defendant had been mailed a Form 110, the government was obtaining a vital and indispensable link in the chain of the contemplated prosecution. The manner in which the local board obtained this information from defendant himself, without warning him of the very real possibility of a criminal prosecution, raises serious questions concerning defendant's Fifth Amendment rights as detailed in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

The *Miranda* case is, of course, significant for a good many reasons. First, it gave constitutional status to the right of the accused to remain silent in connection with the giving of an extra-judicial statement by holding that the Fifth Amendment privilege against self-incrimination applies fully at this stage. Second, *Miranda* made clear that a warning is essential, holding that there can be no intelligent exercise of the privilege without awareness of it. On this the Supreme Court said:

> At the outset, if a person in custody is to be subjected to interrogation, he must first be informed in clear and unequivocal terms that he has the right to remain silent. For those unaware of the privilege, the warning is needed simply to make them aware of it—the threshold requirement for an intelligent decision as to its exercise. 384 U.S. at 467–468, 86 S.Ct. at 1624.

Finally, the Supreme Court laid down the requirement that there must be a knowledgeable waiver in order for the statement to be admissible, and also, of course, held that there can be no waiver unless warnings have been given.

In the instant case there was neither warning nor was there other notice to the accused that the board was then engaged in obtaining an essential link in the course of forging a chain of evidence for use in his prosecution. Thus, he was not advised that the board was not pursuing that which appeared on the surface, i. e. a routine Selective Service function. He was not aware that the board was shortcutting so as to avoid a further procedural step on its part. It would have been relatively easy for the board to send the defendant a new Form 110 so as to give him a right to appeal. Thereafter, they could have ordered him in for induction, and the file would have been complete. Indeed, they can probably, at the present time, follow out this procedure. That, however, does not cure the defects which are now presented to us.

The instant case is unique. Most similar cases involving a question of the necessity for a *Miranda* warning have to do with statements made at the time a registrant refused to take the symbolic step forward for induction into the armed forces or failed to report for civilian work. The statements made at that stage, to the effect that the registrant refused to serve, are incidents of the crime itself, to which *Miranda* does not apply.[2] United States v. Holmes, 387 F.2d 781 (7th Cir. 1967) is distinguishable from the instant case. There it was held that *Miranda* did not apply because, *inter alia*, defendant walked into his local board and volunteered the statement that he would not serve—he was not *asked* to come in or to make any statement.

More analogous are the large number of cases concerning the necessity of a *Miranda* warning during Internal Revenue Service investigations. There, as

---

2. *See, e. g.*, Pittman v. United States, 411 F.2d 635 (10th Cir. 1969) ; Noland v. United States, 380 F.2d 1016 (10th Cir. 1967). In Fults v. United States, 395 F.2d 852 (10th Cir. 1968) the incriminating statement was made three months before the crime (refusal to report), and it was held that *Miranda* did not apply to a statement made before the crime was committed.

here, an individual is often asked to supply information which eventually will loom importantly in his criminal prosecution. The courts in these cases disagree as to whether the person under investigation must actually be in custody before *Miranda* applies, and most recently this disagreement has taken the form of differing interpretations of the Supreme Court opinion in Mathis v. United States, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968). *Mathis* involved the tax investigation of an individual already in custody in a state prison on another charge. Although the investigation at the time Mathis was interrogated was civil, the investigating agent admitted that there was always the possibility that the investigation would end up in criminal prosecution. The Court held that, under these circumstances, Mathis was entitled to a warning of his rights under *Miranda*. In doing so the Court discussed the requirement of custody of the person being investigated. The point was made that it was irrelevant that Mathis was in custody for reasons other than the tax investigation.

The discussion of custody in *Mathis* has led some courts to conclude that actual custody is a prerequisite to the necessity of a *Miranda* warning. *See, e. g.,* United States v. Charamella, 294 F. Supp. 280 (D.Del.1968). The Eighth Circuit has gone even further, holding that warnings need not be given during an Internal Revenue investigation as long as statements used during the criminal prosecution were not obtained by fraud, coercion or misrepresentation. Cohen v. United States, 405 F.2d 34 (8th Cir. 1968).

■ We think that *Charamella* and *Cohen* construe *Miranda* somewhat narrowly. They are, however, different from the case at bar in that here we have a vital nondisclosure under circumstances which called for disclosure. The defendant here cannot be held to have waived his rights when he was unaware of the circumstances. The *Miranda* warnings are therefore necessary because it is impossible for an individual

to waive a right or privilege when he is unaware that he has an option. United States v. Turzynski, 268 F.Supp. 847, 851 (N.D.Ill.1967).

The *Turzynski* case is in point, and enunciates what we regard as the correct principle. In that case a tax investigation shifted from civil to criminal without the defendant's knowledge. The court came to the logical conclusion that a taxpayer being investigated for purposes of criminal tax prosecution is entitled to knowledge of that fact and of his constitutional rights just as any other suspect being interrogated in contemplation of his possible criminal prosecution. The court concluded that *Miranda* was concerned with more than the protection of rights in a custodial atmosphere:

> The [*Miranda*] Court enunciated the broader principle that when the investigative power of the government is directed toward an individual with the intent to obtain incriminating evidence from him, that individual should be afforded an opportunity knowledgeably to exercise his constitutional rights. It is because a person cannot knowledgeably exercise his rights unless he is aware of them that the multiple warning requirement was established. 268 F.Supp. at 852.

To hold otherwise, the court said, would mean that a person suspected of arson, rape, burglary or murder is entitled to greater protection than a person suspected of violating the Internal Revenue laws. If there should be any difference, the suspected tax violator is entitled to *more* protection for he, unlike the suspected murderer or thief, is often not even aware that his interrogators are seeking evidence to convict him of a crime. *Turzynski*, 268 F.Supp. at 850–851. The court concluded that the evidence obtained from defendant absent his knowing and voluntary waiver of his rights was inadmissible under the rules in *Miranda* and Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L. Ed.2d 977 (1964).

*Turzynski* was followed in this District in United States v. Wainwright, 284 F.Supp. 129 (D.Colo.1968) [3] in which, quoting extensively from *Turzynski,* Chief Judge Arraj reached the same conclusion:

The evidence obtained by the Government during that time [the period of the criminal tax investigation before defendant was warned of his rights] was procured in violation of fundamental standards of fairness and it must therefore be suppressed. 284 F.Supp. at 132.

■ The identical considerations of fundamental fairness apply to defendant Casias in the instant case. Criminal prosecution was clearly contemplated when Casias was asked to bring his Form 110 to his local board. In fact, eleven days after the necessary information was received from defendant, National Selective Service Headquarters recommended prosecution. Casias was entitled under *Miranda* to be told that a criminal prosecution was in prospect; that he was then supplying evidence; and that he had a privilege to refuse to do so. It follows that the evidence, obtained from defendant himself, that he was mailed a notice of classification and right to appeal, could not be used in the case against Casias. Miranda v. Arizona, *supra*; Escobedo v. Illinois, *supra*; United States v. Turzynski, *supra*.

There being no competent evidence that defendant was ever accorded this important procedural right, the order of the local board requiring him to report for civilian work was invalid, and the conviction based upon the failure to comply with that order cannot stand. Robertson v. United States, *supra*. The motion for judgment of acquittal should therefore be and is hereby granted in accordance with this opinion.

---

3. *Turzynski* has also been followed in United States v. Dickerson, 291 F.Supp. 633 (N.D.Ill.1968) and in United States v. Gower, 271 F.Supp. 655 (M.D.Pa. 1967).