**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Clarence E. MANSFIELD, Defendant-
Appellant.**

**No. 15802.**

United States Court of Appeals
Seventh Circuit.

July 26, 1967.

Rehearing Denied Sept. 8, 1967,
en banc.

Max A. Rheinstein, Julius Lucius Echeles, Chicago, Ill., Woodrow Hodge, Chicago, Ill., of counsel, for appellant.

Edward V. Hanrahan, U. S. Atty., Richard G. Schultz, Chicago, Ill., John Peter Lulinski, Gerald M. Werksman, Asst. U. S. Attys., of counsel, for appellee.

Before KNOCH, SWYGERT and FAIRCHILD, Circuit Judges.

KNOCH, Circuit Judge.

Dr. Clarence E. Mansfield, the defendant-appellant, was found guilty in a trial by the Court sitting without a jury on a four-count indictment charging wilful evasion of income tax through filing false and fraudulent returns for 1957, 1958, 1959 and 1960, in violation of Title 26, U.S.C. § 7201. He was sentenced to serve one year on each count, the sentences to run concurrently.

Dr. Mansfield contends that:

1. the Court erred in denying his motion to suppress books and records made available to Russell Armstrong, an internal revenue agent, who did not advise Dr. Mansfield that he was conducting an investigation which could lead to criminal prosecution for income tax evasion;

2. giving due regard to the defendant's age, long hours of work, inept bookkeeping methods, and forgetfulness, the government did not prove the element of wilfulness;

3. the computations of the government were in error and duplicated some figures;

4. full recognition was not given to certain allowable deductions which would decrease the amount of tax.

In November, 1960, Dr. Mansfield had spoken to Gertrude Anderson, a tax technician in the Audit Section of the Internal Revenue Department, respecting his 1959 return. She had warned Dr. Mansfield that an agent might visit him.

John Creen testified that he was a special agent of the Internal Revenue Service; that he and Special Agent Ralph Bergstrom visited the defendant at his combined office and residence in Chicago; that they identified themselves and told him they wanted to speak to him about his income tax return. Dr. Mansfield had replied that he thought the matter was closed at the office, but the agents informed him that the matter had been referred to the special agents' office which looked into these matters to see whether there had been any wilful attempt to evade and defeat taxes, that

there was a possibility of criminal prosecution and that Dr. Mansfield did not have to talk to the agents or show them any records.

Later in the same visit, when they asked to see his medical records, the agents again informed the Doctor that he did not have to talk to them or submit any records to them. When asked whether repeated warnings were not unusual, Agent Creen said that the practice varied from time to time pursuant to current court rulings. He testified that Dr. Mansfield said that he understood and that he had nothing to hide; that the Doctor had then instructed an employee of his to give the agents two record books for 1959 which they were allowed to examine in his absence and made available to them an adding machine.

When Dr. Mansfield testified concerning this visit, he said he thought it occurred in January 1961. He also described the records given to the agents as more extensive than the two volumes described by the agents. He testified further that he was given no warnings, that the agents showed him cards identifying them only as from "Internal Revenue" and asked to see his office records, that he had to go out and he had left them at work in his office with his records. He said he later received a bill from Internal Revenue for $10, which he paid, and he considered the matter closed.

On July 2, 1962, Russell Armstrong, an internal revenue agent in the Audit division, was assigned to this case to make the field investigation which was a "joint" investigation for 1957, 1958 and 1959, as he advised Dr. Mansfield when he telephoned him to make an appointment. Dr. Mansfield denied that he was told even that much. Agent Armstrong said he did not explain what a "joint" investigation was, state that he was conducting a criminal investigation in conjunction with the Intelligence Unit of the Bureau of Internal Revenue, or repeat the warnings to which Agent Creen testified.

In a joint investigation a special agent is in charge of the investigation, and some time after the assignment of Agent Armstrong, Special Agent William Sandroff of the Intelligence Unit was also assigned to this investigation.

During July, August and September, 1962, Agent Armstrong made periodic visits to the Doctor's office where he examined a cardboard box of cancelled checks, bank statements, etc., and log books showing income for daily walk-in patients. From time to time he discussed the investigation with Special Agent Sandroff.

At a conference with the special agent assigned to the case prior to William Sandroff, Agent Armstrong said it was decided that it was unnecessary for him to advise Dr. Mansfield of his rights because he had already been so advised by another agent. Dr. Mansfield argues that this was deliberate deceit amounting to subterfuge and misrepresentation and that all evidence obtained by Agent Armstrong ought to have been suppressed.

■ In the course of oral argument, counsel for the government suggested frankly that agents must sometimes decide whether unnecessary repetition of warnings will not frighten off co-operation which might otherwise be forthcoming. We agree that in this case the tactical decision not to repeat full warnings already given did not render the books and records produced subject to suppression as evidence.

The government observes that Dr. Mansfield made no change in his continued permission for examination of his records even after Agent Sandroff did repeat the prior warnings at the time of his own first interview with Dr. Mansfield in October 1962. This fact is at least equally persuasive of the government's contention, that the Doctor was never misled, as of the defendant's own assertion that the damage was already done and revocation of the permission would have served little purpose. In any event, during the entire investigation, Dr. Mansfield withheld his records regarding personal injury patients with claims for damages. The District Court did not err in denying the motion to

suppress. United States v. Spomar, 7 Cir.,[9] 1964, 339 F.2d 941, 943, cert. den. 380 U.S. 975, 85 S.Ct. 1336, 14 L.Ed.2d 270, reh. den. 381 U.S. 956, 85 S.Ct. 1800, 14 L.Ed.2d 728; United States v. Achilli, 7 Cir., 1956, 234 F.2d 797, 805–806, affd. 353 U.S. 373, 77 S.Ct. 995, 1 L.Ed.2d 918.

The defense points out such circumstances as the following:

1. the Doctor's forgetfulness: he couldn't say when testifying whether he was 60 or 61 years old, because he didn't recall the exact year of his birth, and he couldn't remember in which years he attended Brown University or the year he was admitted to practice medicine in Illinois;

2. the lengthy workday he habitually followed, running to twelve hours;

3. he was under treatment for diabetes, hypertension, obesity and sinusitis in 1957 and for Bell's palsy in 1959;

4. his records were kept by a receptionist-secretary who had neither training nor experience in bookkeeping;

5. his tax returns were made out by Robert Neal, who had only an eighth-grade education and who was 75 years old at the time of the trial;

6. he saw three types of patients: (a) those sent by welfare organizations, (b) those referred to him by attorneys, and (c) those he saw in connection with his duties as police surgeon for the City of Chicago at the lockup at 11th and State Streets in Chicago;

7. he did make his books and records available for examination.

Under all these circumstances, the defense feels that the Doctor was admittedly careless, but that there is no showing of intentional evasion.

On the other hand, the government has shown a substantial understatement of gross income for a number of years, which has been held to be evidence of wilful intent to evade. Epstein v. United States, 6 Cir., 1957, 246 F.2d 563, 566, and cases there cited, cert. den. 355 U.S. 868, 78 S.Ct. 116, 2 L.Ed.2d 74.

The returns were prepared from documents and papers supplied by the defendant; some of the figures given Mr. Neal were only estimated. In two of the years in question, Dr. Mansfield's expenses as provided for preparation of his returns exceeded the income figures provided. Mr. Neal testified that in preparing the returns he reduced the amount of these expense deductions because he did not want the Doctor to get into any trouble, and when he told the defendant about that, the defendant was agreeable to the changes. In going through the defendant's records, Agent Armstrong came upon an unsigned, unfiled tax return for 1958 which showed substantially higher gross receipts than the return which was actually filed for that year. The defendant objected to the fact that a photocopy was made of this return form without his knowledge, but Agent Armstrong testified only from his own recollection as refreshed from his own notes. The photocopy was not offered in evidence or otherwise used during the trial.

Although the sole prepayment of taxes was made on his wages from the Police Department, which represented only one of the three sources of his income, the defendant secured annual refunds of several hundreds of dollars in the years in question. He could not have believed that he was entitled to these substantial refunds when no taxes were being prepaid on his private medical practice.

A full disclosure of income records was not made to the examining agents. The defendant told Special Agent Sandroff in October 1962 that he had five or six personal injury patients per month, which was markedly lower than the actual figure. In November 1960 when visiting the Internal Revenue office he made no mention of his personal injury patients. He told Mrs. Anderson that he had not reported some income from welfare patients, but he always withheld the receipts from the personal injury claimant patients. As this was one of the most lucrative aspects of his practice, withholding these records was inconsistent with his assertions that he put his books and records at the agents' disposal. Conduct, the effect of which

is to conceal or mislead, suggests wilfulness. Spies v. United States, 317 U.S. 492, 499, 63 S.Ct. 364, 87 L.Ed. 418 (1943).

█ There was ample evidence from which the Trial Judge could have decided beyond a reasonable doubt that defendant wilfully attempted evasion. United States v. Peterson, 7 Cir., 1964, 338 F.2d 595, 598, cert. den. 380 U.S. 911, 85 S. Ct. 896, 13 L.Ed.2d 798 (1965).

In computing the correct income and deductions, the government produced in evidence cancelled checks paid to the Doctor by some thirty attorneys for services to clients with claims for personal injury. Also introduced in evidence were cancelled checks from the Illinois Public Aid Commission and the Treasurer of Cook County for services to individuals on public relief, in addition to payroll checks from the City of Chicago for services as public surgeon. These were checked as to date and amount against defendant's deposit slips. A number of checks listed on these slips running to total sums in excess of $14,000 for each of the years involved were not in evidence. Many of the checks in evidence had not been deposited but had been cashed or negotiated to others as shown by endorsements. The total cash deposits listed in the deposit slips were not included in gross income because the income recorded in the defendant's daily log books was included as a result of a conference in May 1963, in the Intelligence Division's offices, where Dr. Mansfield, in the presence of his attorney, said that the amounts in his daily log books represented cash receipts which he used to pay expenses. The log books were considered to be a more accurate record than the cash deposits. The computations did include cash retained by the defendant when he deposited only a part of one of the checks in evidence. Interest earned on savings for 1960 were included and consideration given to amounts withheld from the Police Department pay checks. Nontaxable deposits such as tax refund checks, loans, and a check from an attorney which was not considered to be for medical service income, were eliminated.

This method of reconstruction was properly applied. Beard v. United States, 4 Cir., 1955, 222 F.2d 84, cert. den. 350 U.S. 846, 76 S.Ct. 48, 100 L.Ed. 753; Percifield v. United States, 9 Cir., 1957, 241 F.2d 225, 229.

The defendant's accountant disputed the government's analysis of allowable deductions by sums which would have made little inroad on the indisputable fact that there was highly substantial unreported income. The Trial Court which gave due consideration to all of the testimony accepted the government's analysis of the allowable deductions. On this record we are not disposed to disturb the Trial Judge's findings. Glasser v. United States (1942) 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680.

The judgment of the District Court is affirmed.

Affirmed.