**UNITED STATES of America,**
**Plaintiff,**

**v.**

**Albert M. DICKERSON, Defendant.**

**No. 67 Cr. 205.**

United States District Court
N. D. Illinois, E. D.
Oct. 25, 1968.

Thomas A. Foran, U. S. Atty., for plaintiff.

William A. Barnett, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

MAROVITZ, District Judge.

Motion of Defendant for the Return of Property and Suppression of Evidence

This is a criminal prosecution under 26 U.S.C. Section 7203 for failure to file income tax returns for the years 1960, 1961, and 1962. Pursuant to Rule 41(e) of the Federal Rules of Criminal Procedure, defendant has filed a motion to suppress as evidence certain property and information allegedly obtained from him in violation of his constitutional rights. Specifically, he asks this court to suppress as evidence all documents and statements, written and oral, which he supplied to agents of the Internal Revenue Service on or about March 24, 1965, and on four subsequent occasions in that year.

On March 5, 1968, plaintiff filed his motion and attached an affidavit alleging that on several occasions in 1965 he gave information and records to a Special Agent and an Internal Revenue Agent of the Internal Revenue Service in violation of his constitutional rights since he had not been warned by the agents of those rights. The government denied any information had been gathered illegally, but filed no affidavits in support of its answer.

At a hearing on June 27, 1968, held for the purposes of clarifying the criminal nature, if any, of the various interviews, Internal Revenue Agent Donald J. Petrovic testified that while he was making an audit of a scavenger company, he found an entry on the company's books reflecting a large payment to defendant, but that no information return in connection with that payment had been filed by the company. Agent Petrovic suspected defendant had not reported this sum as income, was assigned to audit the defendant, and did so in July, 1964. During this visit, defendant told Petrovic that he had failed to file various income tax returns. At this point, Petrovic had reason to believe that defendant had committed a criminal violation and, pursuant to Internal Revenue Service regulations, suspended any further activity in his civil investigation and referred the case to his superiors to determine if the case warranted criminal investigation. In January, 1965, the case was assigned to Special Agent Allen Cornue, an investigator for the Internal Revenue Service's Intelligence Division, the jurisdiction of which is limited to criminal investigations. Revenue Agent Petrovic was assigned to assist him. The investigation by the two agents began on March 24, 1965, with a visit to defendant at his place of business, at which time Cornue identified himself as a "Special Agent," but did not advise defendant that the investigation had become a criminal, rather than a civil one, or that defendant had a right to remain silent and to refuse to turn over any documents to the agents, or that any records which were handed over could be used against him, or that he had a right to consult with an attorney before questioning and to have an attorney present during the questioning. The two agents saw defendant again on May 7, 1965. Special Agent Cornue interviewed Dickerson by himself on March 29, 1965, April 1, 1965, and June 24, 1965. At the hearing, both agents indicated that they received all of their information from defendant before or on June 24, 1965. When defendant was next interviewed, on November 10, 1965, an attorney was present. The instant indictment is a result of the information gathered in these interviews.

The question presented is whether the information obtained by the Revenue and the Special Agent were in violation of the defendant's Constitutional rights and, therefore, should be suppressed. More specifically, the question is whether the agents of the Internal Revenue Service, at and from the time a criminal investigation is launched

against a taxpayer, are required to inform him of his right to remain silent, of the fact that anything he says may be used against him, and that he has a right to counsel. Initially, it is clear that the principles of Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) and Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), upon which defendant relies, are timely. The *Escobedo* decision was announced before the investigations into defendants tax returns had begun. The *Miranda* decision was handed down after the investigation had occurred. However, it is applicable to all cases where, as here, the trial began after the date of decision. Johnson v. State of New Jersey, 384 U.S. 719, 734, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966); Cook v. United States, 392 F.2d 219 (5th Cir. 1968); United States v. Remco, 388 F.2d 783 (3rd Cir. 1968); United States ex rel. Walker v. Young, 388 F.2d 675 (9th Cir. 1968); Carr v. Henderson, 385 F.2d 531 (6th Cir. 1967); United States v. Smith, 379 F.2d 628, 631 (7th Cir. 1967).

Of course, the landmark decisions in *Escobedo* and *Miranda*, which held that evidence obtained from a defendant is admissible only if it is supplied after a knowing and voluntary waiver of constitutional rights, involved interrogations by police officers in jail surroundings. In another case in this district involving the question of the applicability of *Escobedo* and *Miranda* to non-custodial Internal Revenue Service questioning, United States v. Turzynski, 268 F.Supp. 847 (D.C.1967), Judge Will held that the Internal Revenue Service was required to advise a taxpayer of his constitutional rights at the moment an investigation into his tax returns shifts, without taxpayer's knowledge, from a civil investigation to a criminal investigation. Citing *Escobedo* and *Miranda*, Judge Will continued:

> "We hold that once a taxpayer becomes the subject of a criminal tax investigation, as evidenced by the referral of the investigation to the Intelligence Division or otherwise, our adversary process of criminal justice has become directed against him as a potential criminal defendant. Any evidence obtained from him is admissable only if the taxpayer furnished it after knowingly and voluntarily waiving his constitutional rights and privileges." 268 F.Supp. at 850.

At the time *Turzynski* was decided, only two other post-*Miranda* cases had concluded that *Miranda* was applicable to non-custodial criminal investigations: United States v. Kingry, 67–1 U.S. Tax Cas. ¶ 9262 (N.D.Fla.1967) and United States v. Schoenberg, 67–1 U.S. Tax Cas. ¶ 9393 (D.Ariz.1966). A number of cases had held *Escobedo* and *Miranda* inapplicable to the instant issue. 268 F. Supp. at 851 n. 2. However, we believe that Judge Will skillfully and cogently demonstrated the analytical faults of those cases. 268 F.Supp. at 851–854. The misconceptions which those cases evidence regarding the nature of a criminal tax investigation as well as the lack of necessity for an arrest or physical custody are also discussed, in more detail, in an excellent and recent article: Andrews, The Right to Counsel in Criminal Tax Investigations Under Escobedo and Miranda: The Critical Stage, 53 Iowa L.Rev. 1074, 1087–93 (1968). The *Turzynski* view that a taxpayer is in need of the advice of counsel and should be warned of his rights when a Special Agent enters the case was cited with approval in United States v. Gower, 271 F.Supp. 655, 660 (M.D.Pa.1967) where the court said that "(d)efendant was an accused and any attempt *at this point* to distinguish a criminal tax investigation from any other federal criminal investigation where a crime is known to have been committed is a distinction without a difference." Very similar language is to be found in United States v. Wainwright, 284 F.Supp. 129, 131 (D.C.Colo.1968).

The Government contends that the force of *Turzynski* as well as *Wainwright* is of dubious value in view of United States v. Mansfield, 381 F.2d 961

(7th Cir. 1967), cert. denied, 389 U.S. 1015, 88 S.Ct. 593, 19 L.Ed.2d 661 (1968). As we said before in our Memorandum Opinion of April 25, 1968, however, *Mansfield* is clearly distinguishable from the instant case as well as *Turzynski* and *Wainwright*. In *Mansfield*, defendant was explicitly advised of his rights by agents on at least two occasions during the investigation of his tax returns. The Government decided as a tactical matter not to repeat the warnings for fear of frightening off otherwise forthcoming co-operation. At the time the warnings were given, Dr. Mansfield said that he "understood [his rights] and that he had nothing to hide." 381 F.2d at 963. Consequently, the *Mansfield* case is clearly distinguishable from the instant case where no warnings were made and where defendant had no real understanding of his rights.

The Government then contends that the issue in this case was foreclosed by the recent Supreme Court decision of Mathis v. United States, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968), which according to the Government, held that *Miranda* applies only to custodial interrogation. In *Mathis*, petitioner, who was in a state prison, was questioned by an Internal Revenue Service investigator who failed to warn the prisoner that he had a right to be silent, that any evidence he gave could be used against him, that he had a right to counsel, and that counsel would be appointed for him if he were unable to afford to provide it for himself. Some of the statements made to the government agent were strongly incriminating and were used at the trial in which petitioner was convicted of filing false tax returns.

The Government there urged that *Miranda* was not applicable because the questions asked were part of a routine tax investigation and because petitioner had not been placed in confinement by the officers interrogating him. Largely because routine "tax investigations frequently lead to criminal prosecutions, just as the one here did," the Supreme Court rejected "the contention that tax investigations are immune from the *Miranda* requirements for warnings to be given a person in custody." 391 U.S. at 4, 88 S.Ct. at 1505.

Turning then to the custody issue, the Supreme Court also rejected the notion that the scope of the "custody" was a narrow one. It found no distinction in *Miranda* based on the reason the party interrogated was "in custody." 391 U.S. at 4–5, 88 S.Ct. 1503. In *Miranda*, the Supreme Court explained what it meant when in *Escobedo*, it spoke of an investigation focusing on an accused by saying:

> "By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U.S. 436, at 478, 86 S.Ct. 1602, at 1612.

Confinement in a jail-house setting was considered an obvious situation where pressures would act to undermine the free choice of the individual being interrogated. Yet, the Supreme Court in *Miranda* was not concerned solely with the symptoms, i. e., with jail-house confinement, but with the disease, i. e., coercion, for it said:

> "Today, then, there can be no doubt that the Fifth Amendment privilege is available outside of criminal court proceedings and serves to protect persons in all settings in which their freedom of action is curtailed in any significant way from being compelled to incriminate themselves." 384 U.S. at 467, 86 S.Ct. at 1624.

It would seem to us that the average citizen, faced with repeated questioning by two government agents is an ominous situation to say the least. The Government suggests that the defendant was in no way physically restrained, but we doubt that he really felt free to walk out on the investigators from the Internal Revenue Service. In the absence of sufficient warnings and the assistance of counsel, there are innumerable factors which act on the taxpayer's mind com-

pelling him to "co-operate" with the federal authorities. See Andrews, The Right to Counsel in Criminal Tax Investigations Under Escobedo and Miranda: "The Critical Stage," 53 Iowa L.Rev. 1074, 1111–14 (1968).

That defendant Dickerson was not advised by the Special Agent that the Revenue Service was now conducting a criminal investigation did not make Dickerson's situation less foreboding, but serves only to demonstrate how unprotected he was. In this regard, we consider Judge Will's analysis in United States v. Turzynski, 268 F.Supp. at 851, to be worthy of a lengthy quotation:

"Whether a suspect is induced to incriminate himself by a combination of ignorance of his rights and the coercive atmosphere of custody, or by ignorance of his rights combined with the inference that the purpose of the interrogation is simply to ascertain his dollars and cents liability for taxes, the result is the same, an involuntary self-incrimination. In some respects the tax investigation is more insidious and dishonest than custodial interrogation, for the suspect in custody well knows his interrogators are seeking evidence to convict him of a crime while a tax suspect is permitted and even encouraged to believe that no criminal prosecution is in contemplation. The Internal Revenue Agent who has discussed possible deficiencies with the taxpayer continues active in the investigation augmented by the Special Agent whose presence and purpose as a criminal investigator is never disclosed to the suspect."

Finally, the Government argues that Congress in the newly enacted Omnibus Crime Bill has demonstrated its intent that the *Miranda* rationale should not be applied to non-custodial interrogations. The Government cites 18 U.S.C. § 3501 (d):

"Nothing contained in this section shall bar the admission in evidence of any confession made or given voluntarily by any person to any other person without interrogation by anyone, or at any time at which the person who made or gave such confession was not under arrest or other detention."

We do not believe that this subsection alters our position, however. In the first place, defendant underwent extensive interrogation by two government agents. Secondly, it is clear that the subsection, in both its clauses, refers only to confessions voluntarily made. Under 18 U.S.C. § 3501(a), the duty of determining whether a statement has been made voluntarily is that of the trial judge. Among the factors the judge is to consider are:

"(1) The time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel; and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession." 18 U.S.C. § 3501(b).

We think it apparent from our discussion that defendant Dickerson was not apprised of his rights and that he was not aware of the nature of the investigation being made. It appears, further, that his freedom of action was curtailed in a very significant way. Thus, it cannot be said that his statements to the government agents was voluntary or that he knowledgeably waived his rights. Yet, this is precisely what the constitution requires. Miranda v. State of Arizona, 384 U.S. 436, 475, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1968); Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1937); United States v. Turzynski, 268 F.Supp. 847, 851 (1967).

Because the defendant was not properly advised of his constitutional rights to remain silent and to have the assistance of counsel, the evidence obtained from the defendant during the criminal investigation and before retention of counsel must be suppressed. So too must be any evidence obtained as a result of information gained during that portion of the criminal investigation. Any information gained during the civil investigation may, of course, be introduced.