UNITED STATES of America, Petitioner,

v.

Albert SHLOM, Respondent.

No. M 18–308.

United States District Court
S. D. New York.

April 21, 1969.

Robert M. Morgenthau, U. S. Atty., S. D. New York, by Samuel M. Eisenstat, Asst. U. S. Atty., New York City, for petitioner.

Irwin Klein, New York City, for respondent.

CANNELLA, District Judge.

Motion by the petitioner pursuant to the general authority contained in 26 U. S.C. § 7402(b) to compel compliance with a summons issued by the Internal Revenue Service, is granted.

The summons in question, in the form of a subpoena dated April 20, 1968, was duly issued and served upon the respondent who is an attorney at law and represents two taxpayers, Columbus Hardware, Inc. and Albert Danowitz. The subpoena directs the production of certain records of Columbus Hardware, Inc. The only document in dispute is Item #12 in the subpoena.[1] Columbus Hardware, Inc. and Albert Danowitz, as intervenors, contend that Item #12 is not a corporate record of Columbus Hardware, Inc., but is a personal record of Albert Danowitz. The sole issue before the Court is whether the document described in Item #12 is a corporate or personal record.[2]

The Court held a hearing on March 4, 1969 at which evidence was presented in the form of affidavits, documents and the testimony of certain witnesses. The parties were able to stipulate to a great deal of the factual background in the case. After establishing that the subpoena was duly served upon the Respondent, as attorney for the taxpayers, Morris Goldman, the accountant for Columbus Hardware, Inc. and Albert Danowitz, was called. He testified, in substance, that he prepared the corporate and individual returns of the taxpayers and never saw nor relied upon Item #12 in the preparation of the returns. Mr. Goldman indicated that he felt he had sufficient records for the compilation of the tax returns of Columbus Hardware, Inc. without said book. He stated that the book made no sense to him until Mr. Danowitz explained what the figures contained therein meant.

Albert Danowitz, the sole stockholder and the only compensated officer and director of Columbus Hardware, Inc., testified that the book was not a corporate record, but was his own personal record. He indicated that he did not furnish the book to his accountant to aid in the preparation of either his corporate or individual returns. Mr. Danowitz' affidavit in support of the instant motion [3] stated the book was his personal property and "merely contains figures which serve as an incentive and guide to your deponent." This statement was explained by Mr. Danowitz at the hearing. He indicated that the figures in the book represented the amounts taken in on cash sales and certain collections of Columbus Hardware, Inc. In assembling the Lincoln Center complex, this and other businesses were dislocated. The book in question was kept. It made a distinction between local and non-local, sometimes referred to as transitory, customers and it was intended to aid in the decision of whether to keep Colum-

---

1. Item #12 in the subpoena states as follows: "A bound day book (cash book) wherein the daily totals of the cash register tapes were entered."

2. Respondent and the two intervenors have asserted other grounds in opposing production of the document. These grounds have either been actually or impliedly withdrawn by them or bear no relevance to the issue before the Court.

3. The first page of the affidavit was admitted into evidence as Petitioner's Exhibit 3.

bus Hardware, Inc. in the same general location or move it to another. He testified that only he knew of the book, but that the other officers of the corporation were his wife and other relatives.

■ It seems clear to the Court that the book was intended to furnish documentary support or assistance for a determination of the best location for Columbus Hardware, Inc. While the book can be characterized broadly as a "personal" document since it belonged to Mr. Danowitz alone, when viewed in relation to the surrounding facts and circumstances, the book relates to the corporate affairs of Columbus Hardware, Inc. The Court finds that the figures in the book were intended to furnish information upon which a decision as to corporate business location could be made and as such sufficiently related to the corporate business of Columbus Hardware, Inc. to be produceable under the subpoena.[4]

The motion to compel is granted and the defendant is ordered to comply with all aspects of the summons.

So ordered.

### On Reargument

By decision dated March 12, 1969, this Court granted the petitioner's motion, pursuant to the general authority contained in 26 U.S.C. § 7402(b), to compel compliance with a summons issued by the Internal Revenue Service. The motion of the respondent for reargument of that decision is granted.[1] However, after due consideration and reexamination of the record and the positions of the parties, this Court finds no reason to alter its original decision.

Respondent's initial challenge relates to the finding of this Court, after an evidentiary hearing, that the item in dispute was a corporate record of Columbus Hardware, Inc., rather than a personal record of Albert Danowitz, the sole stockholder of the corporation. The Court has considered all the testimony offered on this subject, in particular that of Mr. Danowitz stating the purpose of the book and its use in determining the location of the corporate business. The fact that this book did not purport to chronicle or detail all of the business affairs of Columbus Hardware, Inc., or that it may have been an excess or cumulative document unnecessary for the preparation of the corporate tax return is of no import.[2] The finding of this Court is that the document is a corporate record.

Respondent next asserts that this Court's decision "apparently disregarded the impact of United States v. Dickerson. * * *"[3] It is difficult to determine what "impact" the respondent alludes to for the case is not in point. In the *Dickerson case,* it was clear that a criminal investigation was in progress at the time the summons was issued. The District Court held that the taxpayer was entitled to a warning of his constitutional rights in accordance with Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and the Court had before it testimony that after the criminal phase of the tax investigation had begun, the taxpayer was not given the warning. In the instant matter, the only mention of criminal consequences which might arise from this investigation, was the statement of the Assistant United States Attorney that there was

---

4. The question of the exercise of an individual constitutional privilege as to a corporate document in a closely held corporation is not before the Court. See Hair Industry, Ltd. et al. v. United States, 340 F.2d 510 (2d Cir.), cert. denied 381 U.S. 950, 85 S.Ct. 1804, 14 L.Ed.2d 724 (1965).

1. Rule 9(m) of the General Rules of the United States District Court for the Southern District of New York.

2. Morris Goldman, the accountant who prepared both the corporate and personal tax returns, testified that he never used the book in question for the preparation of *either* return and that the information disclosed by the book would not necessitate a change in any of the tax returns he prepared.

3. 291 F.Supp. 633 (N.D.Ill., E.D.1968).

the possibility of criminal investigation. He did state that at the present time, only a civil investigation was in progress. Furthermore, this Court does not have before it any testimony that Mr. Danowitz was not warned of his constitutional rights and when the petitioner sought to elicit this information, the respondent objected and the question was withdrawn. United States v. Dickerson, *supra*, has no application to the questions before this Court.

■ Respondent also claims that "[T]his Court erroneously applied the principals [sic] of Hair Industry Ltd. et al. v. United States [4] to the factual situation in the case at bar." In footnote 4 of this Court's decision of March 12, 1969, the *Hair* case was cited with the statement that its holding was not applicable due to the waiver of certain other objections to the production of the book.[5] Respondent now asserts that his personal privilege under the Fifth Amendment of the United States Constitution precludes compliance with the summons. However, the very holding of the *Hair* case was that a sole owner of a corporation may not properly refuse to produce corporate records on the ground of the privilege. This Court has found the document to be a corporate record and the holding of the *Hair* case is binding.[6]

In footnote 2 of this Court's decision of March 12, 1969, a statement was made that the other grounds asserted by the respondent in its motion papers were either withdrawn or irrelevant. At the time of the evidentiary hearing held in this case, the Court was informed that the sole issue before it was whether the document in question was a corporate or personal record. The transcript of the record is replete with references to this "sole issue" and would justify the Court in refusing to consider the other grounds asserted. However, in fairness to the respondent and the intervenors, the Court deems the matters reasserted on the motion for reargument and will examine them on their merits.

■ Respondent claims that the tax investigation in the case at bar is a criminal one and that 26 U.S.C. § 7602 does not permit the use of a summons by a special agent for production of the records desired. The issuance of such summons in this case was not improper, however, for the use of this statutory power is not terminated by the mere possibility of a later criminal investigation. As in United States v. DeGrosa,[7] there is no denial here of the obvious civil purpose of the investigation and the use of the statutory authority was proper.[8] As the Court in *DeGrosa* pointed out, "[T]he fact that a criminal prosecution is on the horizon does not transform the investigation into one 'solely criminal'."[9] The case before this Court is even stronger. A criminal investigation is apparently not "on the horizon", but is only a possibility at this juncture. With the patent civil purpose of the investigation squarely in the forefront, there was nothing improper in the use of the 26 U.S.C. § 7602 authority.[10]

---

4. 340 F.2d 510 (2d Cir.), cert. denied, 381 U.S. 950, 85 S.Ct. 1804, 14 L.Ed.2d 724 (1935).

5. See footnote 2 (decision of March 12, 1969) and the discussion infra at pages 4–5.

6. See application of Weiss, 283 F.Supp. 97 (E.D.N.Y.1968); United States v. Crespo, 281 F.Supp. 928 (D.Md.1968); United States v. Neves, 269 F.Supp. 158 (S.D.N.Y.1967); Caro v. Bingler, 242 F.Supp. 418 (W.D.Pa.1965).

7. 405 F.2d 926 (3d Cir. 1969).

8. See Wild v. United States, 362 F.2d 206 (9th Cir. 1966); In re Magnus, Maybee & Reynard, Inc., 311 F.2d 12 (2d Cir.), cert. denied 373 U.S. 902, 83 S.Ct. 1289, 10 L.Ed.2d 198 (1962).

9. 405 F.2d 926, n. 4, *supra*.

10. There has been no showing that once an Internal Revenue Special Agent enters a case, the investigation then has a *sole* criminal purpose. The cases cited by the respondent are inapposite.

Respondent impliedly reasserts the argument that Mr. Danowitz should have been warned of his constitutional rights by the Special Agent. The Court has before it no indication that he was not so warned. This argument is totally vithout merit.[11]

The next ground alludes to the language used to instruct Special Agents in United States v. Frank.[12] Special Agent Collazo, who testified at the hearing before this Court, denied he was ever instructed in the same way, and the *Frank* case is not applicable here.[13]

Respondent next asserts that his Fifth Amendment privilege prevents the production of this document. This Court has already noted its finding that the document is a corporate record and that the holding in Hair Industry Ltd. v. United States, *supra,* is that the privilege is not a bar to the production of such a document.

■ Respondent's assertion that the summons was improper here as a second examination without written notice to the taxpayer is without foundation.[14] There is not way that the Court could find other than that this examination was a continuing one. It should also be mentioned that respondent did not object to the production of the other items on the summons on this ground.

■ The last of respondent's claimed grounds for his right to deny production of this book is that he is entitled to discovery under the Federal Rules of Civil Procedure prior to the Court's determination of the issues discussed above. Respondent had ample time for such discovery,[15] he made no request for discovery at the evidentiary hearing before this Court, nor was an adjournment re-quested for time in which to conduct discovery. Respondent now claims that he attempted to combine his discovery with the evidentiary matters at the hearing, but no statement to that effect appears on the record. This Court did not limit any discovery by respondent at the hearing, but permitted evidence to be presented on the sole issue to be decided there, the corporate or personal status of the document in question. This argument concerning the alleged denial of rights to pre-trial discovery has no foundation in law or fact.

This Court adheres to its decision of March 12, 1969. The respondent is ordered to comply with all aspects of the summons.

So ordered.

11. See discussion of United States v. Dickerson, *supra.*

12. 245 F.2d 284 (3d Cir.), cert. denied 355 U.S. 819, 78 S.Ct. 25, 2 L.Ed. 2d 35 (1957).

13. In *Frank,* the Court noted that these instructions were given for use in a special "racket group" case. No evidence was presented from which the Court could find a similar investigation here to even raise an inference.

14. See 26 U.S.C. § 7605(b).

15. The summons was served on April 26, 1968; enforcement proceedings were commenced on December 31, 1968 and the motion came to be heard before this Court on March 4, 1969.