**UNITED STATES of America, Plaintiff,**

v.

**Ronald BROWN, Defendant.**

**No. CR–81–47–GF.**

United States District Court, D. Montana, Great Falls Division.

Dec. 7, 1981.

Robert L. Zimmerman, Acting U.S. Atty., D. Mont., Billings, Mont., for plaintiff.

Steve R. Roberts, Great Falls, Mont., for defendant.

## MEMORANDUM

HATFIELD, District Judge.

Defendant was charged by indictment with the May 6, 1981 burglary of the Montana Liquor Store in Poplar, Montana, in violation of 18 U.S.C. § 1153 and § 45–6–204 Montana Code Annotated (1979). On October 16, 1981 defendant filed a pretrial motion to suppress seeking to exclude from admission into evidence certain statements made by the defendant to F.B.I. agents on May 6th and 8th, 1981, and any evidence obtained as a result therefrom. An evidentiary hearing on defendant's motion to suppress was held on November 2, 1981.

The defendant contends that the statements at issue were obtained in violation of the *Miranda* standard and the voluntariness standard of the Due Process Clause and as such must be suppressed. The United States counters by alleging that the defendant voluntarily submitted to be interrogated, was never in custody, and rendered the statements at issue voluntarily. Therefore, the United States maintains that the issuance of the *Miranda* warnings was not required and the statements and physical evidence in question should be admitted since they resulted from the voluntary actions of the defendant.

## FACTUAL BACKGROUND

On or about May 6, 1981, the Montana State Liquor Store in Poplar, Montana was burglarized. Poplar being within the exte-

rior boundaries of the Fort Peck Indian Reservation, the F.B.I. was summoned and informed by local officers that an individual thought to be the defendant had been observed running from a yard where three cases of whiskey were recovered. On the same day, police officers of the city of Poplar went to the home of the defendant's mother looking for the defendant. Upon learning that the defendant was at work, the officers informed the defendant's mother that he was wanted for questioning at the Tribal Jail Building in Poplar. The defendant's mother relayed the information to the defendant and transported him to the Tribal Jail Building on the same day, May 6, 1981.

Upon arrival, the defendant was escorted by officers into the courtroom where he was questioned about the burglary at issue. The interrogation was conducted by two F.B.I. agents. Also present were the Chief of the Poplar City Police and the Chief of Police of the Bureau of Indian Affairs for the Fort Peck Indian Reservation. The defendant answered the questions posed and upon the request of the officers, allowed the trunk of his car to be searched, from which was seized a sledgehammer, allegedly used to gain entrance to the liquor store.

The interrogation of May 6, 1981 lasted for approximately one hour and 45 minutes, at which time the defendant was let go upon the. insistence of defendant's mother that the agents either arrest the defendant or release him. Both the defendant and his mother testified that at one point during the interrogation the F.B.I. agents informed the defendant that if he wanted to play games they could keep him there all day.

On May 8, 1981 the defendant was contacted in person by a Bureau of Indian Affairs Officer at his place of work and informed that the F.B.I. wanted to question him again concerning the burglary at issue. The defendant proceeded immediately to the Tribal Jail Building where he was again interrogated by two F.B.I. agents. Defendant again answered the questions posed.

Three significant facts concerning the interrogations at issue are not in dispute. The defendant was never, during either of the interrogations, (1) informed that he was under arrest, (2) informed of his constitutional rights as required under the Miranda ruling, or (3) specifically informed that he was free to leave at anytime.

On the basis of the facts set forth above, this court must decide whether the events which transpired constituted a violation of the defendant's constitutional rights which would mandate suppression of the statements and evidence at issue.

DISCUSSION

I. *Defendant's Statements*

There exists various standards to be employed by courts in their assessment of the admissibility of the confession of a criminal defendant. In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court held that the first line of inquiry to which any confession must be subjected, is whether or not such confession was elicited under circumstances amounting to a "custodial interrogation", hence requiring the issuance of the *Miranda* warnings. However, even in the event the required warnings are given, the prosecution is still required to show that a confession was voluntary under the due process standards. Therefore, although the *Miranda* standard is the first test to which a confession must be subjected in all cases, the voluntariness standard is the ultimate criterion for the admissibility of a confession. Violation of the *Miranda* standard terminates the inquiry, whereas conformity with *Miranda* merely triggers an inquiry as to the voluntariness of the confession.

The two-tiered analysis of confessions is necessary since the *Miranda* standard is merely a prophylactic procedure to aid courts in their determination of the admissibility of a confession.[1] The *Miranda* standard does not coincide with the due process standard of voluntariness. However, the *Miranda* standard is more protective of an

---

1. *Michigan v. Tucker*, 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974).

accused's rights than is the due process standard of voluntariness, in that being designed to exclude all involuntary confessions, it has the effect of excluding some voluntary confessions in order to assure exclusion of all involuntary ones.[2]

Evident is the fact that a court need employ this two-tiered inquiry when there has been compliance with *Miranda*, in order to assure that no violation of the due process standard of voluntariness occurred after the issuance of the *Miranda* warnings. However, in the situation where no *Miranda* warnings were given, a court need only assess the admissibility of a confession in terms of whether there existed a violation of the *Miranda* standard, since if the confession were involuntary it would necessarily be excluded under the *Miranda* standard.

The confession, the admissibility of which is sought to be suppressed by the motion before this court, is one which arose in the latter situation described above. As such, this court's inquiry need focus only on whether the statements, which are tantamount to a confession, were obtained in violation of the *Miranda* standard.[3]

It is abundantly clear that the *Miranda* warnings are required prior to custodial interrogation. Custodial interrogation means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom in any significant way." 384 U.S. at 444, 86 S.Ct. at 1612. The determination as to the propriety of suppressing the defendant's statements in the case at bar hinges on whether the interrogations which transpired were "custodial" in nature.

■ The Ninth Circuit Court of Appeals has adopted an objective reasonable man standard to be utilized in determining at what point a person's liberty has been sufficiently impinged upon to trigger the *Miranda* warnings requirement.[4] Assessment of the factors as set forth in *Luther, supra*, leads this court to conclude that the defendant in the present case was in custody during both interrogation sessions described above. This court is convinced that under the totality of the circumstances, the defendant could have reasonably believed that he was in custody.[5]

This court is acutely aware of the fact that a "request" or "invitation" to come to police headquarters for questioning does not, in and of. itself, satisfy the custody requirement.[6] However, the language used to summon the defendant in the present case was more imperative in nature than a mere request or invitation. The nature of the language used to summon the defendant adds weight to the conclusion that the defendant was in custody.

■ The physical surroundings in which the defendant was interrogated undoubtedly supports the conclusion that the defendant was in custody. The location of an interrogation is a significant factor in determining the existence of custody since the essential aim of the *Miranda* ruling was to provide protection for suspects in settings rife with the potential for coercion. Although the locale alone is insufficient to support a conclusion of custody, it does add weight to the objective finding that a suspect's freedom was significantly restricted. It is logical to deduce that the interroga-

**2.** *See* Brennan, J., dissenting, *Michigan v. Mosley,* 423 U.S. 96, 113, 96 S.Ct. 321, 330, 46 L.Ed.2d 313 (1975).

**3.** *See United States v. Gardipee,* No. CR–81–27–GF (D.Mont., filed Aug. 26, 1981).

**4.** In *United States v. Luther,* 521 F.2d 408, 410 (9th Cir. 1975) the Court stated:
In this circuit an objective reasonable man test is employed in determining whether a person is in custody. The factors to be considered are the language used to summon him, the physical surroundings of the interro-

gation, the extent to which he is confronted with evidence of his guilt, and pressure exerted to detain him. If the person reasonably believes that he cannot leave freely, he is considered in custody and a *Miranda* warning is required.

**5.** *United States v. Kennedy,* 573 F.2d 657, 660 (9th Cir. 1978); *United States v. Bekowies,* 432 F.2d 8, 12 (9th Cir. 1975).

**6.** *See Oregon v. Mathiason,* 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977).

tions at issue were likely to be perceived as custodial by the defendant since they were conducted in a location associated with law enforcement personnel, *i.e.*, the Tribal Jail Building.

More significant than the location of the interrogation is the manner in which the interrogation is conducted. The situation in which an 18 year old Indian is confronted with questions posed by two agents of the F.B.I., while two other law enforcement officials are present, undoubtedly lends itself to the conclusion that the defendant was in custody.

Finally, there exists evidence that pressure was exerted to detain the defendant. Although such pressure may not have been physical in nature, it was nevertheless extant. Having been informed that if he did not cooperate the defendant could be kept by the officials all day, it cannot be credibly argued that the defendant could not have reasonably believed he was in custody. The exertion of this pressure coupled with the length of interrogation (1 hour and 45 minutes in the first instance) indicates to this court that the defendant was in custody.

The government emphasizes that the defendant was never told he was under arrest and in fact was allowed to leave after the interrogations were complete. This court would be remiss in its duty if it was to conclude on this basis alone that the defendant was not in custody. The reasonable man standard mandates that this court make an objective assessment of the interrogation setting as long as that custody was not expressed, either in acts or words, to the suspect. The mere fact that a suspect is allowed to leave after an interrogation cannot serve as the basis for the conclusion that he was not in custody during the interrogation. Such a conclusion would render the protection afforded by the *Miranda* standard a hollow one indeed, if a suspect was released after making incriminating statements only to be arrested at a later date on the basis of the statements made.

Having concluded that the defendant was subjected to custodial interrogation, it necessarily follows that the law enforcement officials were required by the *Miranda* ruling to apprise the defendant of his constitutional rights. The failure to do so mandates that the statements made during those interrogations be suppressed from introduction into evidence at the defendant's trial.

## II. *Physical Evidence*

The defendant also seeks suppression of a sledgehammer seized from the trunk of his car immediately after the May 6, 1981 interrogation. The government maintains that the consent to search was voluntarily given by the defendant.

█ It is well settled that the Fourth Amendment requires that a consent to search must be shown to have been voluntarily made.[7] Whether such consent was in fact "voluntary" or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances.[8]

In assessing whether defendant's consent to search his automobile was voluntary, this court must assess the totality of circumstances surrounding that consent. It is noted that the fact that there existed a violation of the *Miranda* standard prior to the time that the consent was given, does not necessarily mandate that the evidence obtained as a result of the consent search must be suppressed. The question of whether fruits of a *Miranda* violation must be excluded has not yet been decided by the Supreme Court, and the Ninth Circuit Court of Appeals has refused to apply the "fruits" doctrine of *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), to such violations.[9]

█ Assessment of the totality of the circumstances surrounding the defendant's

7. *Schneckloth v. Bustamonte*, 412 U.S. 218, 228, 93 S.Ct. 2041, 2048, 36 L.Ed.2d 854 (1973).

8. *Id.* at 227, 93 S.Ct. at 2047.

9. *United States v. Lemon*, 550 F.2d 467, 472 (1977).

consent to search convinces this court that the consent was not voluntary. As previously determined, the defendant was in custody at the time the consent was given. This fact in conjunction with the defendant's age and education leads this court to conclude that the defendant's consent was compelled. Therefore, the evidence seized as a result of the defendant's involuntary consent must be suppressed.