**UNITED STATES of America, Plaintiff,**

v.

**Robert J. HARGROVES, Defendant.**

**No. 86–10005–01.**

United States District Court,
D. Kansas.

Feb. 19, 1986.

Robin Fowler, Asst. U.S. Atty., Wichita, Kan., for plaintiff.

W. Thomas Gilman, Redmond, Redmond, O'Brien & Nazar, Wichita, Kan., for defendant.

### MEMORANDUM AND ORDER

PATRICK F. KELLY, District Judge.

This matter is before the Court on the defendant's motion to suppress. The defendant, Robert J. Hargroves, is charged with fraudulently receiving Social Security benefits in violation of 42 U.S.C. § 408(d). Defendant moves to suppress evidence of certain admissions he made to Social Security agents. Defendant contends his Fifth Amendment rights were violated, as those statements were obtained from him during a custodial interrogation without the benefit of *Miranda* warnings. The Court finds the defendant was not in "custody" as that term has been defined by *Miranda* and its progeny. Accordingly, no *Miranda* warnings were required and the defendant's motion to suppress is denied.

In June of 1976, the defendant suffered a heart attack and subsequently underwent triple bypass surgery. In August of 1978, he applied for Social Security disability benefits as he was unable to work due to his cardiac disease. In June, 1979, an administrative law judge allowed his claim and ordered that the defendant receive benefits from and after March 7, 1978. The defendant received benefits until June 3, 1983, at which time the Social Security Administra-

tion terminated the benefits due to their investigation of the defendant.

At this point the facts become controverted. The defendant claims that prior to February, 1985, he received several "threatening" letters asking him to repay the benefits he had received. On February 27, 1985, he received a letter from the Social Security Administration requesting that he report to the Social Security Offices in Wichita, Kansas, on March 6, 1985, for an investigative interview. On March 5, Special Agent Max Kern (Department of Health and Human Services) phoned the defendant at his place of employment to remind him of the meeting.

The defendant reported for his interview on March 6. He claims he was taken into an "interrogation" room with "bare walls" and "only a table and chairs" for furnishings. Pictures of this room introduced at the hearing show a window and several pictures on the walls. Special Agent Kern, another Social Security agent, and the defendant were the only people present. The interview lasted for approximately one hour. The defendant claims Max Kern showed him his badge at the beginning of the session, but the government contends this is impossible as agent Kern did not (and does not) have a badge. At the hearing on this motion, Mr. Hargroves conceded that he was shown identification rather than a badge. In his memorandum in support of his motion, the defendant alleges that agent Kern informed him that it was "a good thing" he appeared voluntarily, otherwise "he would have come to the defendant's place of business and brought him to the investigation involuntarily." The government denies the validity of this allegation. The defendant also claims in his motion that agent Kern repeatedly advised him that he did not believe the defendant would be subjected to any criminal prosecution. However, at the hearing on this motion, the defendant testified that no statements were made to him about the likelihood of criminal prosecution.

In the course of the interview, the defendant gave a statement in which he admitted that he had been gainfully employed during the time he was receiving Social Security benefits. After making and signing the statement, the defendant left the Social Security Office alone. The defendant testified that during the interview Agent Kern was extremely cordial and shook hands with him at the beginning and the end of the interview.

On January 7, 1986, the defendant was indicted for fraudulently receiving Social Security disability benefits, in violation of 42 U.S.C. § 408(d). The defendant has pled "not guilty."

*Miranda* safeguards are implicated only when a suspect is subjected to interrogation *in a custodial setting. Miranda v. Arizona*, 384 U.S. 436, 477–78, 86 S.Ct. 1602, 1629–30, 16 L.Ed.2d 694 (1966). The sole issue before this Court is whether the defendant was "in custody" for purposes of *Miranda.*

The Court in *Miranda* held that "[b]y custodial interrogation we mean questioning initiated by law enforcement officers after a person has been taken into custody *or otherwise deprived of his freedom in any significant way."* 384 U.S. at 444, 86 S.Ct. at 1612 (emphasis added). Accordingly, the custody element of *Miranda* is found where there are significant restrictions on the individual's freedom of action, or on the individual's freedom to depart. *See Oregon v. Mathiason,* 429 U.S. 492, 495, 97 S.Ct. 711, 713, 50 L.Ed.2d 714 (1977). In these situations, the behavior of law enforcement officers may be such as to bear on the individual's will to resist and bring about involuntary confessions to crime. The Supreme Court recently stated that, "the ultimate inquiry is simply whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler,* 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3519, 77 L.Ed.2d 1275 (1983) (quoting *Mathiason,* 429 U.S. at 495, 97 S.Ct. at 714).

Although a suspect may be "in custody" without a formal arrest, the standard is very high for a non-arrest situation. As the Supreme Court recently stated in *Minnesota v. Murphy*, 465 U.S. 420, 430, 104 S.Ct. 1136, 1144, 79 L.Ed.2d 409, 421, "... custody for *Miranda* purposes has been ... narrowly circumscribed." The facts of *Mathiason* are illustrative of this. In *Mathiason*, the police suspected a parolee in a burglary. A police officer left his card at the parolee's apartment along with a note requesting that he call the officer in order to discuss something. The parolee did call, and they agreed to meet at a state patrol office. The parolee went to the meeting voluntarily, was taken into an interview room and informed that he was not under arrest but was suspected in the burglary. He was not advised of his *Miranda* rights. The officer falsely told the parolee that his fingerprints had been found at the crime scene. The parolee then confessed. The Supreme Court held that the confession should not have been suppressed because the parolee had voluntarily come to the police station, had been informed that he was not under arrest, and had been allowed to leave at the close of the interview without hindrance—this despite the fact that the officer had made the false statement about the fingerprints.

*Beheler* and *Mathiason* require that the totality of the circumstances of each case be examined by the Court in deciding whether or not a defendant was "in custody." *Beheler*, 463 U.S. at 1125, 103 S.Ct. at 3519. The standard is whether a reasonable person in the defendant's position would have believed he was in custody and unable to leave if he so desired. *Yount v. Patton*, 710 F.2d 956 (3d Cir.1983); *United States v. Hall*, 421 F.2d 540 (2d Cir.1969).

In *United States v. Brown*, 531 F.Supp. 37 (D.Mont.1981), the court focused on four factors in evaluating the totality of the circumstances: (1) the language used to summon the defendant; (2) the physical surroundings; (3) the manner in which the interview was conducted; and (4) the pressure exerted to detain the defendant. In *Brown*, the court found the defendant *was*

in custody because: (1) the police went to the defendant's house to summon him; (2) the interview was conducted in a jail building; (3) two FBI agents and two police officers were present and conducted the interview; and (4) the defendant was told that if he did not cooperate he would be kept all day.

In the instant case, the defendant was summoned by letter and a follow-up phone call. He came to the meeting voluntarily and left freely. The defendant was never placed under arrest, nor was he threatened with arrest. The statement he gave was in his own words, and there is no allegation that it was "suggested" to him. The agent's alleged statement to the defendant that "it was a good thing he appeared because otherwise he would have been subpoenaed" was arguably intimidating to this defendant. However, the situation herein involved was no more "intimidating" than the situation in *Mathiason*, where the interview took place in a jail and the police officer lied to the suspect. Moreover, Agent Kern's conduct in the instant case was clearly less coercive than the police officer's conduct in *Brown*, where the suspect was interviewed in a jail building and was threatened with day-long custody if he did not cooperate. Mr. Hargroves was never threatened.

The defendant implies that the physical appearance of the interview room (bare walls, etc.) created the atmosphere of a "police station" interrogation room. He also notes that prior to the interview he was a suspect and the investigation was already under way. These factors are unpersuasive, however. In *Beheler*, the court stated: "... We have explicitly recognized that *Miranda* warnings are not required 'simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect.'" 463 U.S. at 1125, 103 S.Ct. at 3520 (quoting *Mathiason*, 429 U.S. at 495, 97 S.Ct. at 714). The site of the interview is only one factor to be considered. In *Beckwith v. United States*, 425 U.S. 341, 347, 96 S.Ct. 1612, 1616, 48 L.Ed.2d 1 (1976), the

court clarified that the "in custody" requirement is not satisfied merely because the police interview a person who is the "focus" of a criminal investigation. (Beckwith was being investigated by the IRS for tax evasion). In fact, "focus" was implicitly defined in *Miranda* as questions initiated by law enforcement officers *after* a person is "in custody." *See Minnesota v. Murphy*, 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984); *United States v. Leach*, 749 F.2d 592 (10th Cir.1984).

The defendant cites *United States v. Dickerson*, 291 F.Supp. 633 (N.D.Ill., E.Div., 1968), as authority that "intimidation" by federal authorities is sufficient to invoke the need for constitutional safeguards. The defendant's reliance on this case is misplaced, as the Seventh Circuit has explicitly held that *Dickerson* was overruled by the Supreme Court's holding in *Beckwith*, 425 U.S. 341, 96 S.Ct. 1612. *See United States v. Fitzgerald*, 545 F.2d 578 (7th Cir.1976). The Supreme Court does not follow the subjective test used in *Dickerson*.

Having reviewed the totality of the circumstances, the Court finds that the interview involved herein was not conducted in such a way so as to have restrained the defendant's freedom of movement to the degree associated with a formal arrest. Accordingly, no *Miranda* warnings were necessary.

IT IS THEREFORE ORDERED this 19 day of February, 1986, that defendant Hargroves' motion to suppress is denied.